## Edwin Moody *vs.* Doe, ex dem. William C. Harper.

The statute regulating judgment liens at the dates of the several transactions, is in these words: " That in all cases the property of the defendant shall be bound and liable to any judgment, that may be entered up from the time of entering such judgment." How. & Hutch. Code, 621. *Held*, that the legislature had only in view, in passing this law, such property as the debtor held at the time the judgment was rendered.

The object in passing the law, was to protect creditors against conveyances and transfers by their debtors of their property, after judgment, and to force purchasers to take it in such case charged with the liens.

A prior lien is entitled to prior satisfaction; but the lien itself must exist, it being a charge upon property for a particular purpose. Where there is no property there can be no lien.

Mere priority of judgment, under the act of 1824, gives no right to a prior satisfaction, unless it creates a lien; and then the right to such satisfaction is confined to the thing upon which the lien operates.

No lien was created by judgment, prior to the recovery of the judgments under which M. claims. *Held*, that the purchaser under the first judgment acquired no title which will relate back to the date of such judgment, or overrule the title created by virtue of the sale under the junior judgment.

The senior judgment was not entitled to prior satisfaction out of after-acquired lands, under the act of 1824, unless such judgment created a lien upon the debtor's property, and then only to the extent, that the property thus bound would satisfy the judgment. *Held*, that the court erred in rejecting the testimony offered.

*Quære.* The law may now be different, as the sheriff is required to examine the judgment roll, and apply the money to the oldest judgment having priority of lien.

On appeal from the circuit court of Hinds county; Hon. P. W. Tompkins, judge.

This was an action of ejectment instituted in the circuit court of Hinds county, on the 21st of November, 1848, by William C. Harper, to recover lots numbered 1, 2, 7, and 8, in fractional square number two north, in the city of Jackson, and county aforesaid. John P. Jones, tenant in possession, was served with process, and under the common consent rule, E.

Moody, landlord of Jones, was admitted and made defendant, and filed for plea the general issue.

The cause came on for trial at the September term, 1850, of the Hinds circuit court, when the jury found a verdict for plaintiff, upon which judgment was rendered, and a writ of possession awarded, from which judgment Moody, defendant, appealed, and filed his bill of exceptions. The record shows, that plaintiff claimed title under an execution sale. The sheriff of Hinds county levied on the lots in controversy, by virtue and under an execution issued on the 12th of January, 1844, on a judgment rendered on a forfeited forthcoming bond on the 16th of October, 1837, in Hinds circuit court, in favor of John Rain against Charles C. Mayson, M. Craft, and John Shields. The lots were levied on, on the 12th day of January, 1844, as the property of John Shields. It was proven on the trial, that John Shields, on whose property the lots were levied upon and sold, died in September, 1839, leaving him surviving as his only heirs his daughter, —— Hill, and his widow, Sarah Shields; and that there had been no *scire facias* or other steps taken to revive the judgment, before the levy and sale of the lots in controversy. The bill of exceptions further shows, that the original judgment in favor of Rain was rendered on the 22d day of July, 1837, upon which judgment an execution issued on the 4th day of September, 1837, against Charles C. Mayson and Thomas Harney, defendants in the original judgment; that this execution was levied upon four slaves, and a forthcoming bond taken with M. Craft and John Shields as securities, which bond was forfeited and became a judgment on the 16th of October, 1837. The amount of the original judgment was $1,531.45. Upon the forthcoming bond judgment, execution was issued on the 13th day of February, 1838, which was levied upon six slaves as the property of C. C. Mayson, which slaves were sold on the 7th of May, 1838, for $2,530, which sum the sheriff indorsed on this execution, and was applied to the satisfaction of other executions. An alias execution issued on the 30th of August, 1838, which was returned superceded, and the supersedeas bond was filed, and a copy is

41 *

embodied in the record, which recites the granting of the order for a supersedeas, filing petition for same, &c.

The clerk of the court issued an alias *fieri facias* on the 15th of May, 1840, of which execution and of the judgment, control was given by assignment of an order dated December 4, 1843, to William C. Harper, the plaintiff below. The last described execution was returned "no property found," and another *fieri facias* issued on the 12th January, 1844, under which the levy on the lots in controversy was made on the 12th day of January, 1844.

Other lands and lots, as well as the lots sued for, were sold on the 19th of February, 1844, to William C. Harper, plaintiff below, and the party having control of the execution, for the sum of ten dollars each.

Plaintiff introduced as testimony, records in cases of several plaintiffs against Charles C. Mayson and others, for the purpose of showing the appropriation of the money made by the sale of the six slaves first levied on and sold under the execution in favor of Rain. All of these records showed judgments recovered against Mayson at the same (June) term, that Rain recovered his judgment, but the original judgments being a few days older. On all of them executions issued to the October term, 1837, which were levied and forthcoming bonds taken, which forthcoming bonds were, with that in the Rain case, all forfeited on the same day, the 16th of October, 1837, rendering the judgments on the bonds all of the same date. The record shows no order of court as to the application of the money collected by sale of the slaves amounting to $2,530; but there is a memorandum signed by Falkner, as deputy clerk, which states, that the money was directed by the court to be applied to the other cases referred to.

Plaintiff tendered the deed from the sheriff to himself in evidence; but defendant's counsel objected, and the objection was overruled, and deed permitted to be read.

Plaintiff also read to the jury, three patents from the State of Mississippi to John Shields, a patent to each of lots numbered 1, 7, and 8, all of which are dated June 15, 1838.

As to lot No. 2, plaintiff offered to read a transcript, by William H. Hampton, clerk of the probate court of Hinds county, of a document recorded in said court, purporting to be a copy of a patent from the State of Mississippi to John Shields for said lot. Defendant's counsel objected to the admission of this document, no direct proof having been made of the existence and loss or destruction of the original of the pretended copy. But upon the statement of Solomon Tifft, that Sarah Shields, widow of John Shields, had placed in his hands the papers of said John Shields, and that the original patent was not amongst the papers he so received; and the statement of plaintiff, that the original was not in his possession, and that he had inquired of Mrs. Hill, the only heir living of John Shields, who had told plaintiff she had never seen said patent; the court admitted it as evidence.

The proof further shows, that Jones was in possession, and that the lots sued for were situated in Hinds county, Mississippi.

Defendant below (Moody) offered in evidence a deed from the sheriff of Hinds county to himself, which was made by virtue of levies and a sale under sundry executions issued on judgments recovered in the Hinds circuit court against John Shields, in April, 1838, of the lots in controversy, and bought by Moody on the third Monday of October, 1839. To the introduction of which deed plaintiff's counsel objected, and the court sustained the objection, and refused to admit the deed, which was excepted to. This was all the evidence in the case.

*Adams* and *Dixon*, for appellant.

We insist that the court below erred in permitting a pretended transcript of a patent to lot No. 2, made by the State of Mississippi to John Shields, to go to the jury as evidence of title in John Shields to said lot. The introduction of this pretended transcript from the probate clerk's office of Hind's county was objected to at the time it was offered; but the objection was overruled, and the court, in the first instruction for plaintiff, charged the jury that it (the transcript) vested the legal title in John Shields. This transcript was wholly inadmissible, in

whatever light it may be viewed. If we treat it as a copy, the original being lost, it could not be admitted, for the preliminary proof was not made. Several witnesses said they had inquired and searched (to some extent) for the original, and could not find it. But how, and by whom, we ask, was it proven, that there ever was an original patent from the State to Shields? Not a particle of proof was offered on this subject, and yet such proof could easily have been made. The records in the secretary of state's office would have shown this fact. The law requires it. Hutch. Co. 99, § 6; Ib. 100, § 3.

But then it is said, the transcript was admissible without proving the existence or loss of the original, on the same footing that you can introduce a transcript of a deed without accounting for or producing the original. But this is under a statutory provision. And where, we ask, is the provision of the statute, requiring or admitting patents to be recorded, and making copies of them, evidence? No such provision can be found; on the contrary, the statute requires certain prerequisites before a deed can be recorded, and these are, that they shall be acknowledged by the party or person before the clerk or other officer, by the subscribing witnesses. Hutch. Co. 605, §§ 1, 3; Ib. 606, § 7.

There is no such acknowledgment or proof on this patent, or copy of a patent. The clerk is under no obligation to record them; and when recorded, they are no more evidence than a copy of a promissory note or bill of exchange would be. The statute makes no mention of copies of patents, as evidence, but only of such instruments as are required, or permitted to be recorded. Hutch. Co. 869, § 1.

And they cannot be embraced by intendment or construction. The fact is, that none of the reasons that induced the legislature to pass the enactments as to the recording of deeds, apply or exist as to patents from the State or federal government. As to these conveyances, there is a record kept elsewhere, and they are supposed, and properly, too, to be of too high a dignity to require recording in the probate clerk's office. There is a presumed notice of the acts of the government; and the source from whence we derived the name "patent," the purposes for

which it was used in England, all show that the idea of recording them is ridiculous. None of the doctrine as to prior and subsequent conveyances, notice to creditors, &c. &c., for which these records of deeds were introduced, do or can apply to a grant made by a State or government in its sovereign capacity.

We cannot see on what ground or principle the court acted in excluding the deed of the sheriff to Moody. It is true, that the judgments from which the executions emanated were not recovered as early as the one under the levy and sale by an execution from which the plaintiff claims; but the levy and sale at which Moody bought was long prior in date to that at which the plaintiff bought the same lots. Moody's purchase was in 1839, under a judgment rendered against Shields in April, 1838. Harper (plaintiff) purchased in 1844, under a judgment on forthcoming bond, rendered in October, 1837. It would have been competent and proper for Moody to have shown that the money made at his sale was applied to the judgment under which plaintiff purchased, and that the sheriff had in his hands at the time an execution from plaintiff's judgment. All of this would have certainly been a proper defence to the action, but the court cut the defendant " short off " by refusing to admit his deed at all. It certainly was legitimate and proper evidence, however much its effect or force might depend upon other evidence in the cause.

We think the court erred in admitting the deed from the sheriff to Harper, the plaintiff, for several reasons. First, it was proven that more than enough property had been levied on, and money made on the execution under which the sale was made, to have satisfied the judgment upon which it emanated; and there was nothing to show what disposition was made of that money, save the mere entry of the sheriff that it had been applied to other securities. It seems to us, that something more than this should be required; that an order and entry on the minutes of the court should be shown. It must be borne in mind, that the purchaser here (Harper) was the assignee and owner of the execution; the purchaser at the sale, and the plaintiff in this action. No part of the doctrine of purchaser without notice can or will apply to him. An abstract of the

judgment under which the property was sold is attempted to be set out in the deed; but instead of setting out the judgment in the forfeited forthcoming bond, which was, as this court has decided, the operative judgment, the original judgment being satisfied and extinguished by it, he sets out the original judgment alone, with a mere memorandum as to the judgment on the forfeited bond.

At the date of the issuance of the execution under which these lots were sold, John Shields was dead, and there had been no revival of the judgment; and, pending the trial, the heirs of Shields moved the court to set aside the sale.

*Potter*, for appellee.

In this case, Harper brought the suit to recover possession of lots in Jackson, purchased under an execution as the property of John Shields, and Moody was admitted to defend.

Harper produced a transcript of the record, judgment, and execution, and sheriff's deed, and proved the possession of Jones at date of suit. There were four lots, and he produced patents from the State to Shields for three of them, and a copy of the patent for the other; making due proof to excuse production of the original.

Suppose the copy of the patent was improper proof. The facts of the case preclude the defendant from objecting. Harper claimed under execution sale of the property of Shields, and so did Moody; and the rule in such cases is, that the plaintiff need not show title in the judgment debtor. *Doe* v. *Pritchard*, 11 S. & M. 327; *Wolfe* v. *Dowell*, 13 Ib. 103; *Love* v. *Gates*, 4 Dev. & Bat. 363; *Stewart* v. *Shoenfelt*, 13 Serg. & Raw. 369; *Riddle* v. *Murphy*, 7 Ib. 230; *Jackson* v. *Cody*, 9 Cow. 140.

Harper was not, therefore, put to proof that Shields had title. And the cases above cited, from 11 S. & M., 4 Dev. & Battle, and 13 Serg. & R., show that the production of the deed by Moody was sufficient proof that he claimed under Shields. In 13 Serg. & R. it was held, that where plaintiff and defendant claimed title, it was to be taken for granted as between them, that the State had parted with her title; the same presumption

arises here, and Moody cannot gainsay it, as he cannot insist that he has no title, and yet claim title.  By producing that deed as a muniment of title, Moody admitted a title formerly in Shields, and he cannot object if a copy was offered by Harper to show that title, as it was offered to prove just what Moody admitted.  If the copy was improper, and his objection good at the time, it was waived when Moody produced that deed, and thus admitted the very fact the copy was offered to prove.  It were absurd to hear Moody now complain that Harper had offered improper proof to show a fact which he, Moody, afterward, and during the trial, admitted.

The general rule is, that a verdict will not be set aside, unless it is very clear that injustice has been done.  *Leflore* v. *Justice,* 1 S. & M. 381.

A new trial will not be granted for the admission of improper testimony, if there is proof to sustain the verdict, and especially where the same result would probably follow another trial.  *Barringer* v. *Nesbitt,* 1 S. & M. 29; *Davis* v. *Black,* 5 Ib. 226.   The same rule governs where evidence is improperly excluded; if the exclusion could not affect the result, no real injury has been done.  *Bohr* v. *S. B. Baton Rouge,* 7 S. & M. 715; *M'Mullen* v. *Mayo,* 8 Ib. 298; *Routh* v. *Agricultural Bank,* 12 Ib. 190.

The returns show an appropriation of the whole sum to other executions, and that appropriation, whether done by court or sheriff, is conclusive.   Moody cannot insist upon the fact, if it were true, that the sheriff misapplied the money.   The copy of the order of court is set out on one of the returns, and the returns are *primâ facie* true.   Defendant should have disproved them.  The verdict was correct; and this court will not, therefore, grant a new trial, even if it should be of opinion that some instruction was improperly given or refused.  *Perry* v. *Clarke,* 5 How. 502; *Hill* v. *Calvin,* 4 Ib. 231; *Pritchard* v. *Myers,* 11 S. & M. 178; *Wilkinson* v. *Griswold,* 12 Ib. 669.

In such cases, the question is not, is the verdict clearly right, but, is it manifestly wrong.  *Waul* v. *Kirkman,* 13 S. & M. 599.

Defendant objected to the reading of transcripts of the cases to which the money made on the Rains judgment, before sale

of the lots in controversy, was applied. Those were offered by plaintiff to show, that all had been levied on the same property, and that the money was applied to them. This was properly done.

Mr. Justice FISHER delivered the opinion of the court.

This was an action of ejectment, brought in the circuit court of Hinds county by the defendant in error, to recover certain lots in the city of Jackson, in the possession of Edwin Moody, the plaintiff in error.

The plaintiff, on the trial in the court below, introduced as his evidence, certain patents issued by the proper officer of the State to John Shields, on the 15th of June, 1838, for the lots in controversy, and then a deed executed by the sheriff of Hinds county to the plaintiff's lessor, on the 20th of May, 1844, accompanied by a transcript of a judgment and execution thereon, rendered in the circuit court of said county, upon a forfeited forthcoming bond against the said Shields, on the 16th of October, 1837 ; by virtue of which it appears that the lots were sold by said sheriff at the time stated, on the 20th of May, 1844, and purchased by the plaintiff's lessor.

Moody, the defendant below, offered to read in evidence a deed executed to him by the sheriff of said county, conveying the same lots, on the 13th day of October, 1839, by virtue of a sale under judgments rendered in said court, on the 17th, 18th, and 19th of April, 1838. This deed was on motion of opposing counsel rejected by the court, and its rejection presents the only question important for us to consider. And this question relates not to the sufficiency, but to the relevancy of the evidence before the jury. The deed was introduced for the purpose of rebutting the evidence offered by the plaintiff; and if it performed this office, it was certainly relevant testimony, and should have been admitted by the court.

The evidence of the plaintiff shows, that the lessor had acquired the title of John Shields to the lots in controversy, by virtue of a purchase under a judgment in force against him, on the 16th day of October, 1837. The deed of the defendant was offered for the purpose of assailing the title thus acquired.

In almost any light in which the testimony can be viewed, it appears to have been relevant to the issue. Its tendency was to prove a title in the defendant, and for this purpose it was certainly competent, because, under any view, if the sheriff's sale was valid, it vested in Moody the title of John Shields, subject to be defeated only by a judgment having a prior lien, and this the defendant had a right to controvert, inasmuch as it was the only thing which could make his title inferior to that arrayed against him.

Moody has the advantage of a title acquired by virtue of a prior sale; but the disadvantage of this sale having been made under junior judgments. The object in offering his evidence was to show, that the advantage of being a senior purchaser was sufficient to protect his possession against the title exhibited by the plaintiff; and if his proof tended to establish this proposition, it was competent, because it might have been sufficient, considered in connection with the plaintiff's evidence, to defeat a recovery by his adversary.

The plaintiff's lessor, being a junior purchaser, must show a title based upon a lien, relating back to a period anterior to the recovery of the judgments under which Moody claims. It is true that the plaintiff has traced his title to a sale under the senior judgment; but does his proof, at the same time, establish a lien, commencing either at the date of the judgment, or at any other period before the recovery of the other judgments? In our opinion, it does not. The plaintiff's evidence shows that the title to the lots in question did not vest in Shields till the 15th of June, 1838, after all the judgments under which both parties claim had been rendered. The act of 1824, the law regulating judgment liens at the dates of these several transactions, is in these words: "that in all cases the property of the defendants shall be bound and liable to any judgment that may be entered up from the time of entering such judgment." H. & H. 621. In enacting this law, the legislature had only in view the property which the debtor held at the time the judgment was rendered.

The great object of the law was to protect the creditor against conveyances and transfers by the debtor, of his property

after judgment, and to force the purchaser to take it in such case charged with the lien. The debtor could not convey what he did not own; and where he had no estate which he could convey at the time the judgment was entered against him, he of course had nothing which it could bind.

It is certainly true, that a prior lien is entitled to a prior satisfaction. But the lien itself must exist; it is but a charge upon property, for a particular purpose; and where there is no property, of course there can be no lien. Mere priority of judgment, under the act of 1824, gives no right to a prior satisfaction, unless it creates a lien; and then the right to such satisfaction is confined to the thing upon which the lien operates.

It will thus be seen, that the judgment, under which the plaintiff claims, constituted no lien on the lots in controversy till Shields became the owner thereof. No lien appears to have been created by this judgment prior to the recovery of the judgments under which Moody claims. And this being the case, the purchaser under the first judgment acquired no title which will relate back to the date of such judgment, or overreach the title by virtue of the sale under the junior judgments.

Under this view of the question, the court erred in rejecting the evidence.

The only adjudicated cases, bearing directly on the point here involved, we have met with, are to be found in Ohio and Pennsylvania. Under a statute in the State of Ohio, making a judgment a lien upon the lands of the debtor from the first day of the term of the court at which it was rendered, the supreme court of that State, in an able and well considered opinion, decided that the statute did not embrace land acquired by the debtor after judgment; and that if he sold the land before a levy of a *fi. fa.* issued on the judgment, the purchaser acquired a good title. *Styles, ex dem. &c.* v. *Murphy,* 4 Ohio R. 92. It will be seen by this decision, that the court confined the lien to the lands of the debtor at the date of the judgment, and wholly discarded the idea that it attached at all to after acquired lands. The same doctrine is recognized by the supreme court of Pennsylvania. 6 Binn. 135. The authorities

on the other side merely hold that the lien attaches to after-acquired lands by the debtor at the date of the acquisition, and that a purchaser in such case would take subject to the lien. But we have found no case sustaining the doctrine contended for by counsel, that the lien of the' judgment, upon lands thus acquired, relates back to the date of the judgment. Such a doctrine could only be sustained upon the principle, that the senior judgment was entitled to a prior satisfaction. We have seen that this was not the case under the act of 1824, unless such judgment created a lien upon the debtor's property, and then only to the extent that the property thus bound would satisfy the judgment.

It is possible, as suggested by counsel, that the law may now be different, as the sheriff must examine the roll and apply the money to the oldest judgment. But this question is not now before us; and we, therefore, do not decide it.

Judgment reversed, and cause remanded.

The appellee in this case petitioned the court for a reargument, which was refused by the court.