## CREIGHTON v. LEEDS, PALMER & Co.

### JUDGMENT LIEN.

Section 266 of the civil code of Oregon provides: " From the date of the docketing of a judgment, as in this title provided, or the transcript thereof, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed."

### JUDGMENT FIRST DOCKETED TAKES PRECEDENCE.

Leeds, Palmer & Co. recovered a judgment against B., February 4, 1873. C. recovered judgment against B., November 9, 1876. B. acquired title to real estate, June 10, 1878, which was levied upon and sold under C.'s judgment. L., P. & Co. afterwards issued an execution against B. and sought to subject the same land to the lien of their judgment: *Held*, that the judgments ranked upon said after-acquired property in the order of their dates of docketing.

APPEAL from Benton. The facts are sufficiently stated in the opinion.

*Chenoweth & Johnson,* for appellants.

*R. S. Strahan and J. W. Rayburn,* for respondents.

By the Court, WALDO, J.:

This suit was brought by the respondent in the circuit court for Benton county, to enjoin the sheriff of said county from levying an execution on certain lands purchased by respondent at an execution sale. The facts are, that on the 4th day of February, 1873, the appellants, Leeds, Palmer & Co., recovered a judgment against Simeon Bethers. On the 9th day of November, 1876, the respondent also recovered a judgment against said Bethers. Each judgment was docketed at the time it was recovered, and remained unsatisfied, when, on the 10th day of June, 1878, Simeon Bethers acquired title, by descent, to the tract of land in question. The respondent made the first levy on said land, and purchased the same at the execution sale. After said levy, in November, 1879, the appellants had leave to issue an execution on their judgment of February 4, 1873, and thereupon placed an execution in the hands of Sol. King, sheriff, to subject the said lands to the payment of the judgment.

The point in controversy arises under section 266, page 160, of the civil code of Oregon: " From the date of the docketing of a judgment as in this title provided, or a transcript thereof, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which may be afterwards acquired therein."

The appellants claim that judgments rank on after-acquired property in the order of their dates of docketing, while the respondent insists that if two judgments have been docketed against a defendant, they will both attach to subsequently acquired property at the same moment, and neither will have

priority over the other on account of its prior docketing or rendition, and cites Freeman on Judgments, sections 355 and 356; *Michaels* v. *Boyd*, 1 Ind., 259, and *Moody* v. *Harper*, 25 Miss., 484.

Appellants claim that the text and the authorities cited are not in point in the construction of the statute. That under the statute it is priority of docketing, and not priority in point of time at which the lien attached, that determined the right of priority of payment. The question is on the construction of the statute. In construing a statute we must never lose sight of its object and intent. While the immediate object of the statute is to provide for judgment liens, the primary object is to secure the payment of judgment debts. In giving a lien, the object is to compel the debtor to satisfy the debt. This compulsion is exercised by means of the lien; that is, giving to the creditor the right, running with the land, to have the debtor's lands applied to the satisfaction of the judgment.

The right to satisfaction accrues as soon as the judgment is entered; for the entry of judgment fixes the date at which the creditor chooses to avail himself of the power of the law to compel the payment of his debt. If the lien is co-extensive with the judgment obligation, there will be no distinction in right of preference between property in existence when the judgment is recovered, and that afterwards required. A law releasing after-acquired property from liability to be taken and applied to the satisfaction of a judgment, would impair the obligation of the contract. Future acquisitions are liable for contracts, and to release them from this liability would impair their obligation. (*Sturgis* v. *Crowninshield*, 4 Whea., 198.)

In *Neely* v. *Henry*, 63 Ala., 263, the court say: "In the absence of statutory or constitutional exemptions, the law subjects to the payment of debts any and every beneficial interest of the debtor in property, real or personal, whether the interest is legal or equitable, held severally, jointly or in

common with others.    Nor is there any intendment that the parties have in view only the property which the debtor may own at the time of entering into a contract, or to which he may then have an inchoate right.    Subsequently acquired property is as liable to the payment of debts as that which the debtor may own at the time of creating a debt.    A state law which sought to release such property from liability for the payment of past debts, would impair the obligation of contracts, and violate the constitution of the United States."

It follows that if the lien was strictly an incident of the judgment—if the judgment, *per se*, gave the lien to enforce payment, the right of priority as to all property, after-acquired or otherwise, would naturally be co-extensive with the priority of the judgment.    The lien is a right to take with a preference over all adverse interests.    There was that in its origin under the statute of 13 Edw., 1, which prevented any preference as to after-acquired lands, but this was because the lien was an incident of the writ of execution, either of its issuance, or the *actual present* right to issue, and hence could not relate back to a period prior to the existence of that which created it.    This will be shown by a reference to its origin under the statute giving an *elegit.*

In *Bliss* v. *Clark*, 39 Ill., 595, the court say: "At common law, a judgment created no lien on real estate, nor could it be sold on execution.    But as trade became developed, and was fostered by the government, it was found necessary to subject it to the payment of debts.    The first enactment having that object was the statute of Westminster, 2, adopted the 13 Edw., 1, ch. 18, which was usually called the statute *de mercantoribus*.    It authorized the judgment creditor to sue out the writ of *elegit*, by which the sheriff was required to have all of the debtor's goods liable to execution appraised and delivered to the creditor in satisfaction of his debt, and if insufficient for the purpose to deliver to him a moiety of his freehold estate until he should have execution of his judgment. The court in analogy to a *fiere facias*, held that this writ

created a lien on the real estate of the debtor from the test of the writ. Thus it will be seen that it was the writ, and not the judgment, which created the lien."

So, in *Scribner* v. *Deans*, 1 Brock., 170, Chief Justice Marshall, in delivering the opinion of the court, says : "The judgment in favor of John Allen having been first rendered, would constitute the first lien, had there been no stay of execution. The rank of that judgment depends on the question whether the lien takes place at the rendition, or at the time when execution may issue on it. It must be admitted that a judgment at common law did not bind lands, and that there has been no statute which in direct terms creates the lien. But courts have so construed the statute, which gives the *elegit*, as to infer a lien from the power to take the lands in execution. The lien, then, grows out of the right to issue the *elegit*, and is, consequently, inseparably connected with that right."

It is important to note the distinction declared in these cases—that the lien is, correctly speaking, an incident or consequence of the writ, not of the judgment, because out of this fact grew the principle that there were no priorities between judgment liens on after-acquired property. It followed inevitably from this principle that as to all judgments in existence when the property was acquired, no lien could have a preference, because the right to take the lands in execution, which created the lien, accrued to each creditor at the same moment. The lien could not relate back beyond its origin in the power to take the lands under the writ. It was not a potential right, but an existing present right to take, that created the lien.

The same principle is applied in *Michaels* v. *Boyd*, 1 Ind., 259, and in *Moody* v. *Harper*, 25 Miss., 484. The statutes cited in those cases say nothing about after-acquired lands. In *Moody* v. *Harper*, the court were of opinion that the legislature did not have such lands in view when they enacted the statute.

In *Stiles* v. *Murphy*, 4 Ohio, 92, the court declared a like opinion on a similar statute.    In *Michaels* v. *Boyd*, 1 Ind., 259, the court also founded its opinion, not on anything declared by the statute, but on the principles of the common law, as the authority cited shows.    These cases are not in point in the construction of our statute.

*In re Boyd*, 4 Sawyer, 264, Deady, J., after describing the character of the lien that grew out of the statute 13 Edw., 1, says: " Now, the modern statute lien of a judgment, as provided in sections 266--8, of the Oregon civil code, is altogether different from this.    In the latter case the lien arises, not from the judgment, but from the docketing thereof.    Without the entry on the docket there is no statutory lien.    Neither is this statute lien contingent upon the issuing of an execution and levy.    It is absolute even against the conveyance of the same premises by the judgment debtor.    Being a creature of the statute, and not an incident or consequence of the judgment, its existence and validity depend on a docket entry in conformity with the statute.    It is a strict legal right or advantage, and must stand or fall by the statute which gives it. (*Miama Ex. Co.* v. *Turpin*, 3 Ohio, 504; *Douglas* v. *Huston*, 6 Ohio, 162; *Buchan* v. *Sumner*, 2 Barb. Ch., 193; *Isaac* v. *Swift*, 10 Cal., 81; *Ackley* v. *Chamberlain*, 16 Cal., 183; *Bowman* v. *Porter*, Id., 221.)

Under the statute there is a present inchoate right of lien created, *per verba de presenti*, to take effect by relation when the property is acquired.    The statute does not say there shall be a lien from the date of the acquisition of the property.    It expressly makes the lien upon after-acquired property date from the date of the docketing of the judgment.

The legislature must be presumed to have meant what they have expressed.    The court has no power to dispense with the words in the statute, " from the date of the docketing." " Statutes are to be interpreted so as to give effect to all the words therein, if such an interpretation be reasonable, and be neither repugnant to the provision nor inconsistent with the

objects of the statute." (*United States* v. *Bassett*, 2 Story, 389.)

But it may be suggested that a lien cannot commence at a period anterior to its own existence, and consequently the statute cannot mean what it says—that there shall be a lien on after-acquired property from the date of the docketing of the judgment.

A lien may not commence, but it may easily have a preference over adverse interests, to create which, and to prevent such adverse interests from dispossessing the creditor of his debt, is its object—by relation to a period before it actually took effect.

Thus, in *Sturgis* v. *The Bank of Cleveland*, 3 McLean, 140, a mortgage was recorded July 2. Afterwards, but at the term of court commencing on the first of the same month, a judgment was recovered against the mortgagor. *Held*, that the judgment was the paramount lien. The statute of Ohio, under which the question was decided, read: "The lands and tenements of the debtor shall be bound for the satisfaction of the judgment against such debtor from the first day of the term at which the judgment shall be rendered." Whether, under this statute, the judgment was entered before or after the recording of the mortgage, was of no importance. As the court, in *McLean* v. *Rocky*, 3 McL., 237, say, the legislature had an undoubted right to say, as declared in the above statute, a judgment shall be a lien upon lands and tenements from the first day of the term at which it was rendered.

*Sturgis* v. *The Bank of Cleveland* is an instance of a lien relating back to a period, and taking effect against adverse interests, before the judgment itself existed. So there is no difficulty in this case in regarding the lien as relating back to the date of docketing the judgment. This is the construction warranted by the plain language of the statute, and there is not only no inherent difficulty in the construction, but it has analogies in admitted principles of law.

Thus, where the husband acquires property after marriage,

and dies, the inchoate right of dower of the widow becomes vested in such property, and relates back before the acquisition of the property, to the date of the marriage, to the exclusion of all adverse interests, acquired against the husband after marriage, though before the date of the acquisition of the property. Yet the inchoate right of dower cannot be said to be an interest in lands which the husband has not yet acquired. The result is produced by the operation of the right which gives the estate, and which has the power to invest the estate when acquired, with the priority it possesses. The relation to the date of the marriage is one of law, and to accomplish certain purposes, and is as effectual to exclude adverse interests as though the estate had then actually vested.

So of the judgment lien. There may be an inchoate right of lien—a remedy for the satisfaction of claims against the debtor—which may possess a similar power of taking effect by relation. Such, it seems obvious to the court, is the lien created by section 266 of the civil code.

It follows that the judgment of the court below must be reversed.

Judgment reversed.