The plaintiffs, J. W. Moore and others, and the defendants, W. H. Jordan and others, were heirs at law of Samuel E. Westray, who died domiciled in the county of Nash on 15 February, 1894. He was at the time of his death seized and possessed of lands lying in Edgecombe and Nash Counties. William S. Battle, one of the heirs at law of S.E. Westray, was indebted to various parties who had obtained judgments *Page 63 
against him and had caused the same to be docketed in said counties. The said judgment creditors were made parties to the (87) proceeding for the sale of the lands and consented thereto. Sales were made by commissioners appointed by the court, and upon the coming in of the report the sales were duly confirmed. From the sales of lands lying in the county of Nash the share of the said William S. Battle was $970, from which the sum of $209.31 was alloted on account of his homestead, leaving a net balance of $760.69 to be applied to the judgments docketed and in force in the said county of Nash and against the said William S. Battle. The amounts and dates of docketing of the judgments are set out in the decree rendered herein by the following judgments against the defendant W. S. Battle and others, docketed in the Superior Court of Nash County, to-wit:
1. In favor of E. B. Lewis for the sum of $2,000, with eight per cent interest from 1 January, 1882, less payment of $200 of date 1 December, 1884, and docketed 30 August, 1884.
2. In favor of P. C. Cameron, administrator, for the sum of $3,000, with eight per cent interest.
The Clerk decreed as follows:
"That the judgments aforesaid docketed in the county of Nash prior to the death of S.E. Westray on 15 February, 1894, when the interest of W. S. Battle in the real estate of the said Westray lying in said county was acquired, stand on the same footing and the liens of the same attach at one and the same time; and that the fund arising from the sale of the said lands lying in the county of Nash and remaining in the hands of the Clerk of this Court, after paying the said sum of $209.31 toward the homestead of the said W. S. Battle and its proportional part of the cost hereof as hereinafter provided, (88) shall be disbursed and paid pro rata upon the judgments aforesaid docketed in the Superior Court of Nash County in favor of E. B. Lewis, P. C. Cameron, adm'r, and P. C. Cameron.
"That the funds hereafter arising from the sale of W. S. Battle's interest in said lands lying in the county of Nash are to be disbursed and paid upon the aforesaid judgments docketed in said county prior to the death of the said Westray, in the same manner and proportion as is herein provided."
The defendant E. B. Lewis appealed from the decree of the Clerk of the Superior Court providing that the funds arising from the sale of the Nash County lands should be disbursed and paid pro rata upon the judgments docketed and in force in Nash County in favor of E. B. Lewis and P. C. Cameron, administrator, and P. C. Cameron.
Upon the hearing of the defendant E. B. Lewis' appeal by James D. *Page 64 McIver, Judge, riding the Second Judicial District, the judgment of the Clerk, declaring the judgments docketed in the county of Nash prior to the death of Samuel E. Westray on 15 February, 1894, when the interest of William S. Battle in the real estate of the said Westray lying in said county was acquired, stand on the same footing and the liens of the same attach at one and the same time, was affirmed.
The defendant E. B. Lewis appealed from the said judgment.
We are now confronted for the first time with the question whether previously docketed judgments take by their priorities, according to the dates when docketed, the after-acquired lands (89) of the judgment debtor, or whether they take pro rata the after-acquired lands cast by decent on the judgment debtor. The defendant Lewis contends that, as was the case under our former system, the lien when it attaches relates back to the day when the judgment was docketed. This is denied by the other defendants. It is conceded that the liens of the several judgments on after-acquired lands attacheo instanti and at the moment when the title vests in the judgment debtor, also that the lien of each judgment attaches at the time it is docketed on all lands then owned by the debtor. It will be observed that those liens arise from the docketing, and priorities accordingly are established, and not by any principle of relation. Neither the court nor counsel have been able to find any decided case on this question in any of the States, except one in Oregon, which will be referred to later. We are therefore to construe our statute, The Code, sec. 435, according to its meaning and on general principles of reasoning. At common law no judgment proprio vigore was a lien upon land. Under our former system, when an execution issued and was levied upon land, the lien thereby acquired related to the teste of the execution, not by reason of any self-executing force in the fi. fa. or the judgment proper, but by force of a statute (West. 2) which was enacted expressly to give the lien created by the levy a relation to the teste of the writ. The relation was not given upon any idea of rewarding the diligent creditor, but to take from the debtor the power to transfer his property to others and thus deprive the creditor of the fruit of his recovery. This reason does not now exist under our system, because the docketed judgment fixes the lien, and the debtor cannot escape it, and if he sells thereafter the purchaser takes subject to the statutory lien of our Code, and the principle of relation is not necessary to protect the creditor. (90)Cessante ratione cessat ipsa lex. Whilst this question was not *Page 65 
presented in Sawyer v. Sawyer, 93 N.C. 321, this Court remarked: "This statutory legislation (The Code, sec. 435) must therefore, to no inconsiderable extent, dispense with many rules before in force, and especially that of relation of the execution to its teste, as unnecessary and inapplicable to the new procedure and practice." We must, then, look to the act itself for its true intent. The Code nowhere directly or indirectly enacts the doctrine of relation except in section 433, which declares that all judgments rendered in the Superior Court and docketed within ten days after the term "shall be held and deemed to have been rendered and docketed on the first day of said term." So the Legislature did advert to the doctrine of relation, but failed to declare that it should prevail, except in said section 433, and its silence in all other sections affords a fair inference that it did not intend that it should prevail in section 435.Expressio unius exclusio alterius. Assuming that the Legislature had power to give the lien a retroactive effect, as was done by Westminster 2, yet it has not done so, and it would be some strain on the legal mind to say that a docketed judgment, even in effect, was a lien upon land during a period when the judgment debtor had no land. A lien cannot antedate its origin without statutory aid.
There seems to be no reason why priority should be allowed when the title to the land and the several liens occur at the same moment. There is no equitable ground on which to place it, because one judgment debt in the eye of the law is as just as any other, and there is no natural justice in the proposition.
The Court, in Creighton v. Leeds, 9 Or. 215, under a similar statute and in a like case, held that the first docketed judgment had priority over the other judgments on after-acquired lands, and this is the only case yet found. The reasoning in that case is not (91) satisfactory. It is put, first on the ground that such is the meaning of the statute; secondly, that the debtor has an inchoate interest in his future acquisitions, on which the judgment acts and is a lien, and likens it to the inchoate interest of a married woman in the future-acquired lands of her husband during coverture. We fail to see any similarity. The proposition loses sight of the true reason why dower was allowed in such lands. It is true that the marriage contract is the initial point of her rights, but the reason is the "sustenance of the wife and the nurture and education of the younger children," and it was extended to future-acquired lands in order to prevent the husband from defeating the object of the rule, which has no application to The Code, section 435, as to judgments docketed before the estate falls in. The authorities quoted in the Oregon case do not support the conclusion, *Page 66 
and are cited only to call attention to some supposed analogies under the former system. The contention in Kollock v. Jackson, 5 Ga. 153, was not between judgment creditors, but between a judgment and a factor's lien for goods and advances made to raise a crop, which factor's lien arose subsequent to the rendition of the judgment, and it was held that the judgment had preference because of their act of Assembly of 1799, which declared that "all property of the party against whom a verdict shall be entered shall be bound from the signing of the first judgment." This decision does not fit the present question. Our conclusion is that the proceeds of the land should be applied to the judgments pro rata.
Affirmed.