1817.

BERRY and another, administrators of BERRY, *against* THE MUTUAL INSURANCE COMPANY.

The *act concerning mortgages* extends to leasehold, as well as to freehold estates.

Priority of registry is of no avail against a previous *notice* of an unregistered mortgage.

Where several equitable interests affecting an estate are otherwise equal, they will attach according to priority of time.

A *second* mortgagee, who neglects to have his mortgage registered, will not be relieved against a prior unregistered mortgage, unless he shows, from non-delivery of possession, or other circumstances, that *imposition* has been or might be practised on him by, or with the concurrence of, the first mortgagee, which could not be detected or guarded against by the exercise of ordinary diligence.

The mere circumstance of leaving the title deeds with the mortgagor is not, of itself, sufficient to postpone the first mortgagee to a second mortgagee, who has taken the title deeds, without notice of the prior encumbrance. There must be fraud, or gross negligence equivalent to fraud, on the part of the first mortgagee.

A subsequent *bona fide purchaser* is expressly protected by the statute, against prior unregistered encumbrances; but a mortgagee is not a *purchaser* within the meaning of the statute.

He may, however, protect himself, by a registry, against a prior unregistered mortgage, without notice.

The statute does not make a registry indispensable. The omission to register only exposes the mortgagee to the hazard of losing his *lien*, in case of a subsequent *bona fide* purchaser, or to the postponement of it to a subsequent mortgage registered.

*September* 30th.

[ * 604 ]

IN *October*, 1801, *John R. Johnson* executed a bond, for 500 dollars, and a mortgage of a lease, for a term of years, of a lot of land in the city of *New-York*, to secure the payment to *Berry*, the intestate. The mortgagee died prior to the 8th of *November*, 1813, the principal of the *bond, and considerable interest thereon, remaining unpaid; and the plaintiffs were appointed his administrators. The mortgage was not registered until the 12th of *March*, 1814. The bill stated, that after the execution of the bond and mortgage, the defendants obtained from *Johnson* another mortgage of the same *term for years*, which had not been registered. That the defendants had possessed themselves of the lease, which had many years to come unexpired, and the rent of which was very small, and had, by sundry mesne assignments, acquired the equity of redemption; but that they concealed the lease from the plaintiffs, &c. The bill prayed for an account, and that the defendants be decreed to pay to the plaintiffs the amount due on the bond and mortgage

to the intestate, or that the residue of the term unexpired might be sold, to satisfy the plaintiffs, and for general relief.

The defendants, in their answer, stated, that *Johnson*, on the 14th of *May*, 1811, being in possession of the lot and of the lease, and no encumbrance appearing on record, offered to assign the lease to them, by way of mortgage, to secure a loan of 2,000 dollars ; and the defendants, believing that he had good right to make such assignment, free from all encumbrance, and having no notice of any encumbrance on the premises, lent him the 2,000 dollars, and took his bond for that sum, payable, with interest, on the first day of *November* following, and an assignment of the lease as security, which was delivered over to them. The lease was dated the 10th of *May*, 1796, from *A. Lispenard* to *P. Marseles*, for 66 years, at a peppercorn rent, with a clause of re-entry, &c. The lease was assigned to *Johnson*, and by him assigned and delivered to the defendants. They admitted that they had possession of the premises, and that the *equity of redemption* was assigned, the 11th of *January*, 1815, by *Johnson* to *J. R. B.*, and by him, on the 30th of *January*, 1815, to *W. W.*, who, on the 1st of *January*, 1816, assigned the same to *the defendants. That the defendants were informed, early in the year 1814, that the intestate had a mortgage on the term, which was before the registry of it, and they then informed the plaintiffs of the lien they had on the lease, and their knowledge of their assignments thereof. The defendants consented to a sale of the residue of the term, or to convey their right to the plaintiffs, and account to them for the rents, on being paid their debt ; and insisted that the intestate, by not having his mortgage registered, and suffering *Johnson* to keep possession of the lease, enabled him to impose on the defendants, and that, therefore, the plaintiffs ought to be postponed to the defendants.

The secretary of the defendants, who was examined as a witness, said that the first knowledge which the defendants had of the bond and mortgage of the plaintiffs was in the winter of 1813, when one of the plaintiffs applied for information as to the debt due the defendants, and the security held by them.

The case was brought to a hearing on the 1st of *July* last.

*Riggs*, for the plaintiffs, contended, that the mortgage to the intestate being first given and first registered, was entitled to a preference. The *act concerning mortgages*, (1 *N. R. L.* 372. sess. 36. ch. 32. s. 2.) gives the preference to the mortgage first registered ; and if made *bona fide*, and for a good consideration, it must be first paid. In *Johnson*

*Margin notes:*
1817.

BERRY
v.
MUTUAL INS
Co.

[ * 605 ]

*July* 1st.

1817.

BERRY
v.
MUTUAL INS.
Co.

[ * 606 ]

v. *Stagg*, (2 *Johns. Rep.* 510. 521.) the Court of Errors decided, that the second section of the act extended to mortgages of *leasehold*, as well as of freehold estates.

Leaving the lease or title deeds in the hands of the mortgagor is no ground, of itself, for postponing the first mortgagee. There must be circumstances to show fraud on his part. (1 *Fonb. Eq.* 152, 153, 154. note (*n.*) 6 *Vesey*, 183. 190. 12 *Vesey*, 130.) But there is no pretence *of fraud in this case. In *Beckett* v. *Cordley*, (1 *Bro. Ch. Cas.* 353. 357.) Lord *Thurlow* said, that " this Court never binds a third person, but where there is notice of a treaty." " There is no case in the books, but where the party to whom the fraud is imputed was conusant of the treaty in which the fraud is practised." The plaintiffs, or their intestate, cannot, in any way, be implicated as party to a fraud, and nothing but actual fraud can devest him of his priority. (2 *Johns. Rep.* 525.) It was so decided by Lord *Thurlow*, in *Tourle* v. *Rand*. (2 *Bro. Ch. Cas.* 650. 652. `Plumb` v. *Flint*, 2 *Anst.* 432. S. P.)

If the defendants rely upon their ownership of the equity of redemption, they stand in the place of the mortgagor, and must pay the plaintiffs' mortgage. They must either redeem this mortgage, or waive the equity of redemption. (*Mocatta* v. *Murgatroyd*, 1 *P. Wms.* 393. 395. 3d *Resol.*)

*Boyd*, and *Wells*, contra, insisted, that the intestate was guilty of such *gross negligence* in not registering his mortgage, and in permitting the mortgagor to.retain the possession of the *lease*, that his mortgage ought to be postponed to that of the defendants. Thirteen years elapsed before the mortgage was registered. A *registry* after the plaintiff had *notice* of the subsequent mortgage to the defendants, cannot vary the legal or equitable rights of the parties.

In *England*, they have several statutes relative to the registry of deeds in certain counties, which declare deeds not registered void as against subsequent *bona fide* purchasers; yet it has been decided by the *English* Courts, that a person purchasing, with *notice* of an encumbrance not registered, shall pay, though his deed is first registered. (2 *Bro. P. C.* 425. 2 *Eq. Cas. Abr.* 482. pl. 19. 3 *Atk.* 646. 653. *Sugd. L. of V.* 470, 471.) In *Ireland*, also, they have a registering act, (1 *Sch. & Lef.* 98. 137.) which gives preference to a deed according to the priority of the *time of registry; yet Lord *Redesdale* held, that the priority given by the act applied only to a deed *above exception.* (2 *Sch. & Lef.* 68.)

According to the decision of Lord *Thurlow*, where there

[ * 607 ]

is a voluntary concurrence on the part of the first mortgagee, in the mortgagor's retaining possession of the title deeds, he is considered as accessary to the second mortgagee's lending his money, and ought, therefore, to be postponed. The suppression of the truth, as well as the suggestion of a falsehood, so as to cause a prejudice to another who has a right to know the truth, is sufficient, according to the established rules of equity, to postpone the claim of the party who had been guilty of the suppression. (*Coop. Eq. Pl.* 138. 1 *Fonb. Eq.* 154. 1 *Term Rep.* 762. 755.) The result of all the cases on this subject is, that, in order to postpone a prior mortgagee, it is necessary to prove fraud, or actual notice, or *negligence* so gross as to amount to fraud. (2 *Vernon*, 727. note. 6 *Vesey, jun.* 174. 188. *Ambl.* 652.) Now, what *grosser negligence* can there be, than what has been shown on the part of the first mortgagee, in this case?

Again; admitting that the plaintiffs and defendants have equal equity, yet the defendants have got the legal estate. In *Head* v. *Egerton*, (3 *P. Wms.* 280.) Lord Ch. *Talbot* would not compel the second mortgagee to give up his title deeds, unless the prior mortgagee paid him his money.

The cause stood over for consideration to this day.

THE CHANCELLOR. The equitable rights of the parties, in this case, must have reference to the time when the knowledge of their respective mortgages was communicated to each other, in the winter of 1814, and prior to the registry of the elder mortgage. The subsequent registry by the plaintiffs was of no avail. The rights of the parties had become *fixed*, by means of the *notice*, previously, mutually and concurrently given, and which notice, as *to them, answered all the purpose and object of a registry. Priority of registry never prevails over a previous notice of an unregistered mortgage. (10 *Johns. Rep.* 461, 2.) In considering this case, then, I shall place entirely out of view the fact of the registry. The real point in the case is, which of the unregistered mortgages had the preference in equity, when the information of their existence was given and received.

If there be several equitable interests affecting the same estate, they will, if the equities are otherwise equal, attach upon it, according to the periods at which they commenced; for it is a maxim of equity, as well as of law, that *qui prior est tempore potior est jure.* This rule has been repeatedly declared; (*Clarke* v. *Abbott*, 2 *Eq. Cas. Abr.* 606. pl. 41. *Bristol* v. *Hungersford*, 2 *Vern.* 525. *Symmes* v. *Symonds*, 1 *Bro. P. C.* 66. *Brace* v. *Marlborough*, 2 *P. Wms.* 492. 495.) and we are to see if there be any thing in this case to prevent the application of it.

**Margin notes:**

1817.

BERRY
v.
MUTUAL INS
Co.

*September 30th.*

[ * 608 ]

Priority of registry is of no avail against a previous *notice* of an unregistered mortgage.

Where equitable interests in an estate are, otherwise, equal, they will attach according to priority of time.

1817.

Berry
v.
Mutual Ins.
Co.

There is no fraud charged or proved upon the plaintiffs, and if they are to be postponed, notwithstanding they have the elder mortgage, it must be on the ground of culpable negligence, either in leaving the lease with the mortgagor, when they took the mortgage of his term, or in not causing their mortgage to be seasonably registered. I feel strongly disposed to give to these circumstances all the weight to which they can be entitled.

1. It is understood to have been the old rule in the *English* chancery, that if a person took a mortgage, and voluntarily left the title deeds with the mortgagor, he was to be postponed to a subsequent mortgagee, without notice, and who was in possession of the title deeds. The reason of the rule was, that, by leaving the title deeds, he enabled the mortgagor to impose upon others who have no registry to resort to, except in the counties of *Yorkshire* and *Middlesex*, and who, therefore, can only look for their security to the title deeds, and the possession of the mortgagor. *The rule was so understood and declared, by Mr. Justice *Burnet*, in *Ryall* v. *Rowles*, (1 *Atk.* 168. 172.   1 *Vesey*, 360.) and by Mr. Justice *Buller*, in *Goodtitle* v. *Morgan*, (1 *Term Rep.* 762.) and there are decisions which have given great weight to the circumstance of the title deeds being in possession of the junior mortgagee.   Thus, in *Head* v. *Edgarton*, (3 *P. Wms.* 279.) the lord chancellor said, it was hard enough upon a subsequent mortgagee, that he had lent his money upon lands subject to a prior mortgage, without notice of it, and, therefore, he could not add to his hardship, by taking away from him the title deeds, and giving them to the elder mortgagee, unless the first mortgagee paid him his money ; especially as the first mortgagee, by leaving the title deeds with the mortgagor, had been, in some measure, accessary in drawing in the defendant to lend him money.   This case, however, so far from establishing what was supposed to be the old rule of equity, evidently contradicts it, and admits the better title in the first mortgagee.   So, in the case of *Stanhope* v. *Verney*, before Lord *Northington*, (*Butler's note to Co. Litt.* 290. 296. § 13.) the second mortgagee, without notice, had possession of the title deeds, but the chancellor did not give him the preference on that single circumstance, but because he also had got possession of an outstanding term.   There does not seem, therefore, to be the requisite evidence of the existence of any such rule in equity, as has been stated by some of the judges ; and if there was, a different rule has

[ *609 ]

The · mere circumstance of leaving the title deeds with

been since established.   It is now the settled *English* doctrine, that the mere circumstance of leaving the title deeds with the mortgagor, is not, *of itself*, sufficient to postpone

the first mortgagee, and to give the preference to a second mortgagee, who takes the title deeds with his mortgage, and without notice of the prior encumbrance. There must be fraud, or gross negligence, which amounts to it, to defeat the prior mortgage. There must be something like *a voluntary, distinct, and unjustifiable *concurrence,* on the part of the first mortgagee, to the mortgagor's retaining the title deeds, before he shall be postponed. Lord *Thurlow,* in *Tourle* v. *Rand,* (2 *Bro.* 650.) said, he did not conceive of any other rule by which the first mortgagee was to be postponed, but fraud or gross negligence, and that the mere fact of not taking the title deeds was not sufficient; and that if there were any cases to the contrary, he wished they had been named. So the rule was also understood by Chief Baron *Eyre,* in *Thumb* v. *Fluitt,* (2 *Anst.* 432.) and has since been repeatedly recognized. (Lord *Eldon,* in 6 *Vesey,* 183. 190. Sir *William Grant,* in 12 *Vesey,* 130. 1 *Fonb.* 153. 155. note.) It is admitted, by these same high authorities, to be just, that the mortgagee, who leaves the title deeds with the mortgagor, so as to enable him to commit a fraud, by holding himself out as absolute owner, should be postponed; but the established doctrine is, that nothing but fraud, express or implied, will postpone him.

2. The hardship and abuse complained of in the *English* cases, arise from the want of a general registry act, under which a second mortgagee can always secure himself. I believe there are no registry acts in *England,* except in certain counties, as *Yorkshire* and *Middlesex;* and the provision in such cases, (see stat. 3 and 4 *Ann,* ch. 4.) is similar to that in our act concerning mortgages, and gives the subsequent purchaser, or mortgagee, the preference, *if the memorial of his deed be first registered.* It has been decided, in *Johnson* v. *Stagg,* (2 *Johns. Rep.* 510.) that our act concerning the registry of mortgages extends to leases for years, assigned by way of mortgage; and that the leaving of the lease with the mortgagor, was no evidence of fraud, because the registry of the mortgage was a beneficial substitute for the deposit of the deed, and gave better and more effectual security to subsequent mortgagees. *The registry of the mortgage is notice; and if the first mortgagee neither takes the title deeds, nor registers his mortgage, he only exposes himself, and not the subsequent purchaser, or mortgagee. The statute expressly secures the *bona fide* purchaser, and it equally enables the subsequent mortgagee to secure himself, *by registering his mortgage.*

We have seen that the leaving the title deeds with the mortgagor is no prejudice to the first mortgage; and there

VOL. II. 60 . 473

*Margin notes:*

1817.

BERRY
v.
MUTUAL INS. Co.

[ * 610 ]

a mortgagor, is not, of itself, sufficient to postpone the first mortgagee, who has taken the title deeds, without notice of the prior encumbrance.

There must be fraud, or gross negligence, equivalent to fraud, to postpone a first mortgagee to a second mortgagee without notice.

[ * 611 ]

The registry of a mortgage is a substitute for the deposit of the title deeds.

A subsequent *bona fide* purchaser is ex-

1817.

BERRY
v.
MUTUAL INS.
Co.

pressly protect-
ed by the stat-
ute against pri-
or unregistered
encumbrances;
and a subse-
quent mortga-
gee may pro-
tect himself by
a registry of
his mortgage.

The statute,
however, does
not make a
registry indis-
pensable. The
omission of a
registry only
exposes the
mortgagee to
the hazard of
losing his lien,
in case of a
subsequent bo-
na fide pur-
chaser, or to the
postponement
of it to a subse-
[ *612 ]
quent registered
mortgage.

A mortgagee
is not a pur-
chaser within
the meaning of
the registering
act.

is the less necessity for it with us than in *England*, because, with us, the creditor who subsequently, and without notice of any prior unregistered mortgage, deals with the mortgagor, can always protect himself in the easiest and most effectual manner ; and, supposing he omits to do it, by a misplaced confidence in the mortgagor, has he any equitable claim to be preferred to a prior mortgagee, who, under the same misplaced confidence, has equally omitted to do it ? This is the turning point in the present case.

The first mortgage was valid without registry. The statute does not render a registry indispensable. The omission of the registry only exposes the mortgagee to the hazard of a loss of his lien by a subsequent *bona fide* purchase, or to the hazard of a postponement of his lien to a subsequent *registered* mortgage. A second mortgage will not, *per se*, and without registry, gain a preference. There is no such principle to be deduced from the statute, and there is no reason or necessity for it in the nature of the case. The reason why a *bona fide* purchaser is expressly excepted from the operation of an unregistered mortgage is, that he could not otherwise deal with safety, and would be exposed, even with the utmost vigilance, to the frauds of the mortgagor. The act does not provide for the registry of *his* deed, but only for the registry of mortgages, and gives them a preference according to the *priority of the registry. The second mortgagee protects himself by his registry, but the purchaser does not, and cannot; and, therefore, the statute declares that his deed shall absolutely prevail over the unregistered mortgage. The statute of 3 and 4 *Ann*, relative to the west riding of *Yorkshire*, provides for the registry of deeds and mortgages promiscuously, and, therefore, places them upon an equal footing.

Though, in one sense, every mortgage is a purchase, yet the mortgage act evidently speaks of purchasers, in the popular sense, as those who take an absolute estate in fee. There is no pretext for considering a mere mortgagee as a purchaser, within the meaning of the second section of the *act concerning mortgages*.

I have not been able to discover any principle of law or equity that will enable me to say, that the first mortgage is to be deprived of its advantage of priority of time. The omission to register the mortgage was not capable of producing any mischief to third persons, who would use ordinary diligence and precaution. The defendants. ought not to charge a negligence upon the plaintiffs of which they have been equally guilty. It was their own fault or folly that they were not protected. They trusted to the assurances of the
474

mortgagor that his land was unencumbered; and the plaintiffs trusted equally in the mortgagor, that he would not, afterwards, sell or mortgage the land. It is a common rule, say the books, that where of two persons, equally innocent, or equally blamable, one must suffer, the loss shall be left with him on whom it has fallen; and here comes in the other rule, that the equities being otherwise equal, the priority of time must determine the right.

It is very clear that the first mortgagee was not bound to register his mortgage, because the law makes it valid, *as between the parties, without registry. The registry is only a matter of precaution, and the statute has provided against all the mischief of the omission. If the party will not avail himself of the means of safety provided by statute, he cannot expect that this Court will grant him further aid, and especially against a party whom he charges with no fraud. If relief is ever given in any case, on the ground of policy, or constructive fraud, against the sale or mortgage of property, it is because, from the non-delivery of possession, or from other circumstances, *imposition* had or might have been practised, which could not be detected or guarded against by the exercise of ordinary diligence. No such ground for relief exists in this case.

I am, accordingly, of opinion, that the plaintiffs are entitled to relief, according to the prayer of their bill, and that the defendants are either to account to them for the amount due on their bond and mortgage, or that the residue of the term be sold for the satisfaction of their debt. The costs of suit are to be paid out of the property mortgaged.

<div align="right">

1817.

BERRY
v.
MUTUAL INS.
Co.

[ * 613 ]

A second mortgagee, who neglects to have his mortgage registered, will not be relieved against a prior unregistered mortgage, unless from the non-delivery of possession, or other circumstances, *imposition* has been, or might be practised on him, which could not be detected or guarded against by the exercise of ordinary diligence.

</div>

<div align="center">

Decree accordingly.
475