## WILLIAM HARVEY v. JONES & EATON, ET AL.

1. An action, under section 557 of the code, to quiet title, can only be brought by a person in actual possession.
2. A possession, adverse to the grantor at the time of the purchase, is constructive notice to the vendee of the occupant's title.
3. The record of a deed is but *prima facie* evidence of its delivery.
4. The purchaser of the mortgagor's interest, after condition broken, takes but the equitable right to redeem, and he is not protected by the rule favoring innocent *bona fide* purchasers without notice, but he is bound to take notice of all prior equities.

SPECIAL TERM.—On demurrer of Jones and Eaton to the answer, and counterclaim against them of their co-defendant, George W. Tucker.

The facts sufficiently appear in the decision.

*Woodruff & Hopkins*, for plaintiff.

*King, Anderson & Sage* and *Jones & Eaton*, for defendants.

STORER, J. The petition is filed by the assignee of a mortgage, to foreclose the equity of redemption. The property sought to be subjected is, twenty-five feet of a lot one hundred feet in depth and two hundred feet in length, situate in Cincinnati. Jones & Eaton are sued as mortgagors.

Among the many defendants who are brought into the suit, is George W. Tucker. He has filed his answer, and claims to have been, with one Ludlum, the owner of the whole tract in 1839, and is now, as he asserts, the holder of the legal title. The facts stated are briefly these: In that year, Tucker and Ludlum purchased several acres of ground, which included the land in controversy; they sold, in the same year, one hundred by two hundred feet, to John Stevens, the deed bearing date July 15, 1839; at the same time Stevens executed his mortgage to secure balance of purchase-money, to wit—$795 in one year, $840 in two years, and $885 in three years. On the 25th of December, 1840, Stevens being unable to pay the purchase-money, it was agreed between the parties, that the mortgagee should receive back the property, and cancel the mortgage and notes; the property was then, it is alleged, worth no more than the original purchase-money. To release the mortgagor's equity of redemption, and close the transaction, the mortgagor, Stevens, made his deed in fee simple, with covenants of warranty, executed on the 25th of December, 1840, which was delivered to the defendant, Tucker, who then held the mortgage, by assignment, from his co-mortgagee, Ludlum, and which was recorded on the 2d of April, 1841. This deed was made and received in good faith, on the assurance from Stevens, as well as his son Adam Stevens, that there had been no transfer, or assignment, of the estate conveyed by Tucker and Ludlum to Stevens, the father. Having thus taken the deed, it is averred, that

Tucker took possession of the mortgaged property, and has been in possession thereof ever since, paid the taxes, as well as the assessments for paving, extinguished an old claim for dower, sold a portion of the land, and subdivided the residue, the plat of which was duly put upon record. He further avers that he knew nothing of the plaintiff's claim until about the time this petition was filed, when he found that Jones & Eaton set up a deed from Adam Stevens for the one hundred by two hundred feet of land, of the date of July 19, 1851, and then learned, that there was a deed on record from John Stevens to Adam Stevens, purporting to be made the 24th of September, 1839, and on inquiring, he found that the deed had never been delivered to Adam Stevens, that he had never paid anything as a consideration, and that the original had never been out of the hands of the grantor. He also avers that Jones & Eaton never paid a dollar to Adam Stevens for the conveyance made to them ; that it was obtained from him through misrepresentation, and was not intended to include the property now in dispute. Other facts are stated, which involve, not only moral honesty, but professional character, to which we need not now allude, nor even suppose that such statements were true, without clear proof of their existence.

The defendant Tucker, having then set forth his case, alleges the facts as a counterclaim, and asks that the plaintiff, with all the parties defendant to the original petition, should be made parties, and that he may be quieted, by the decree of the court, in the possession of the property, and the parties setting up their several claims, be required to release them.

To this answer and counterclaim, the defendants have answered, and under section 119 of the code, the answer and counterclaim have been ordered to be docketed and heard as a separate action.

The defendants, Jones & Eaton, have answered as to the twenty-five by one hundred feet which they mortgaged to the plaintiff Harvey, and demurred as to the residue.

The question, then, is submitted to us, shall this demurrer be sustained?

It is very clear, that if the title to the one hundred by two hundred feet is in Tucker, and he has now the legal right to assert it, the case docketed is in the nature of a bill *quia timet,* as we find the right is conferred by section 557 of the code, which is but the recognition of the remedy provided by the practice act of June, 1831, Swan, 703, section 14, which authorizes, "any person having the legal title and possession of lands to file a petition against any other person setting up a claim thereto, and if the com- plainant establishes his title to the land, the defendant shall be decreed to release his claim."

A judicial construction has been given by the supreme court to this section.

It has been held that the meaning of the section includes the setting up a claim to dispose of the title, not merely the ordinary title by deed from private persons, but the at- tempt to sell for taxes, as well as the levy by execution. 3 Ohio, 73, *Burnet* v. *City of Cincinnati;* 2 Ohio, 471, *Bank U. S.* v. *Schultz;* 5 Ohio, 178, *Norton* v. *Beaver, et al;* 5 Ohio, 522; 10 Ohio, 350; 18 Ohio, 273.

It is also decided that the petitioner must set forth, and prove, that he was in the actual possession of the premises to which he asks his title to be quieted.   8 Ohio, 384, *Clark* v. *Hubbard.*

We are asked to infer that there was no actual possession of the premises in the defendant when he filed his counter- claim, and are directed to the allegations specially set forth in the answer to support the assumption.   How far the facts stated may, or may not, on the hearing, be deemed sufficient to sustain the claims of possession, need not now be decided. It appears to us, that *prima facie,* at least, the allegations are properly made, and establish the facts required by law.   It is admitted by the demurrer, that the statements of the an- swer are true, and where we find it is charged that the mortgagee has paid all the taxes, even for the four years that

Jones & Eaton claimed to have held their title from Stevens; that he has discharged all the assessments for paving; paid off an incumbrance; sold a portion of the land, and subdivided the whole into lots, and recorded the plat, it can not but lead us to the conclusion, in the absence in the meantime. of all adverse claims, that Tucker was in possession, within the spirit and meaning of the code, at the time he filed his answer and counterclaim.

We need not refer to the situation of the property, nor regard what should be the evidence of the occupation of lots not inclosed, but still within the city limits, and surrounded by valuable improvements. Suffice it to say, there can be no unvarying rule in such cases—each must depend upon its particular circumstances.

If the allegation is properly made, it is contended that the defendants were innocent purchasers without notice, and there is nothing in the answer, or counterclaim, that furnishes any evidence of notice to the defendants, which can protect the mortgagee. It is an established rule of equity, sanctioned by the experience of its justice, as well as its necessity, that the possession of land adverse to the grantor, at the time of the purchase, is constructive notice to the vendee of the occupant's title.

In 10 Ohio, 267, *Cunningham* v. *Buckingham*, the court say: "A man is not at liberty to shut his eyes against the truth, and shelter himself under a plea of ignorance; that when a fact comes to his knowledge that necessarily puts him on his guard, he is bound to make diligent inquiry, and to search for information at the sources from which it is most natural to expect it; and that the possession, which was adverse at the time, though not actual notice of title, was presumptive notice of a violent nature." And, again, in 7 Ohio, part II, 90, *House* v. *Beatty, et al.*, it was held that, "Possession was constructive notice of the whole of the complainant's claim." So in 13 Ohio, 426, *Kelly, et al.*, v. *Stanbery, et al.*, the court ruled: "The party purchased while the complainants were in the possession of the premises, and was therefore charged,

in equity, with full notice of the nature and extent of their rights, and stands in no better situation than his vendor." As was very pertinently said by Judge McLean, in 1 McLean, 29, *Smith* v. *Shane, et al.:* "It is of no importance what the general opinion may be, or the belief of any individual, respecting a title. If enough be made known in the negotiation for the purchase to put the purchaser on inquiry, and lead him to a full knowledge of the title, it is all that equity requires."

These authorities but assert the law as it has always been administered in England and our own country.

Another ground relied upon by the defendant, Tucker, is, that as the answer charges that the deed from John Stevens, though on record, was never delivered; and if so, that no title passed to him, and, of course, none from him to Jones & Eaton and their grantors; while it is here relied on, that the facts averred show a delivery in law. ' An examination of the authorities will show, that the record of a deed is but *prima facie* evidence, at most, of its delivery, and our statute, making copies from the record evidence, proceeds upon that hypothesis.

The presumption of the execution, and delivery of an instrument, from an exhibition of the authenticated copy, may be rebutted by competent proof.

The law we believe to be well settled, that the fact of the record being made may be explained; and if, upon all the circumstances disclosed, it shall appear there was no intention by the grantor to deliver the deed, it may well be decided that there was no delivery.

The authorities on this point are numerous, and from the most enlightened courts. 3 Ohio St. 377, *Mitchell* v. *Ryan;* 10 Mass. 456, *Maynard* v. *Maynard;* 12 Johns. 418, *Jackson* v. *Phipps;* 12 Mass. 451, *Harrison* v. *Phillips Academy;* 2 Wendell, 308, *Jackson* v. *Perkins;* 13 Pick. 69, *Powers* v. *Russell;* 1 Denio, 323, *Elsey* v. *Metcalf;* 3 N. H. 304, *Barns* v. *Hatch;* 1 Penn. 32, *Chess* v. *Chess, et al.;* 10 Barr, 287, *Blight* v. *Schenck.*

The recording of the deed adds nothing to its validity; 2 Ohio, 55, *Johnston* v. *Haines.* And the custody of the deed, after the record, by the grantor, when the existence of the deed itself is unknown to the grantee, is held as almost conclusive evidence that there was no intention to deliver it; 13 Pick. 69, *Powers* v. *Russell;* 1 Denio, 323, *Elsey* v. *Metcalf;* 5 Shepley, 391, *Hatch* v. *Haskins.* And as there can be no delivery, unless the grantee assents to it, and intimates his acceptance, no acceptance in such case can be presumed; 7 Ohio, part II, 50, *Lloyd* v. *Giddings;* 12 Johns. 418, *Jackson* v. *Phipps;* 1 Johns. Ch. 240, *Souverbye and wife* v. *Arden.*

The possession of the deed by the grantee raises the direct presumption that it was delivered to him in good faith, and a like possession by the grantor can not well be said to produce the same result.

If, then, the deed from John to Adam Stevens was never delivered, no title passed to him, and none could be imparted to his grantees, Jones & Eaton. But this fact may depend upon the subsequent acts of the parties; for a delivery may be made after a deed is recorded, and become valid in law, if accompanied by good faith and an assertion of title, indicating an intention to make that a valid deed which was before regarded as conveying no title. This, however, we will not now discuss; it is a matter of fact we are not called upon, in this decision, to examine.

If Jones & Eaton, on this hypothesis, derived no title from their grantor, their grantees are now in *pari delicto;* they obtain no higher or better right than their vendor.

The question whether they are *bona fide* purchasers or not, is not in controversy, the question solely is, had they, from whom they bought, the legal title. There is a strong case on this point, if it was deemed necessary to cite an authority, in 10 Barr, 291, *Blight* v. *Schenck,* where the rule is authoritatively laid down.

Another and very serious question arises, and which must, in some shape or other, dispose of the case, and that is, what estate did Jones & Eaton purchase of Adam Stevens

admitting that the deed from John to Adam is valid ? All the estate of John, at the time the deed to Adam was made, was the right to redeem, and thus obtain the fee. The condition of the mortgage from John Stevens to Tucker and Ludlum, had not then been broken, as the payment had not become due, and yet, for all practical purposes, although the mortgagor might remain in possession till the forfeiture accrued, he held no more than an equitable right, and when Adam Stevens conveyed to Jones & Eaton, he certainly had no legal title to the land, as the condition of his father's mortgage, had long since been broken, and the only possible right he possessed was to file his bill to redeem, tendering the amount due, and all necessary expenditure upon the property, made by Tucker, in the first place. He could not maintain ejectment, neither could his grantees; for the mortgage of John Stevens to Tucker and Ludlum would have been a perfect bar. His title, then, was purely equitable.

How, then, can the case of an innocent purchaser in good faith for value, be said to apply ?

If we understand it, its object was to protect the holder of the legal title only, leaving the question of equitable rights to depend upon the well-known principles by which the chancellor decides ; first, where the equities are equal the law prevails; and again, where the claims are simple equities, *prior est tempore potior est jure*. 2 Johns. Ch. 608, *Berry* v. *Mutual Ins. Co.; * 1 Peters, 559, *Steele* v. *Spencer, et al.*

In 7 Peters, 271, *Vattier* v. *Hinde*, Chief Justice Marshall lays down the law thus broadly: " The rules respecting a purchaser without notice, are framed for the protection of him who purchases a legal estate and pays the money without the knowledge of an outstanding equity. They apply fully only to the purchaser of the legal estate. Even the purchaser of an equity is bound to take notice of any prior equity." See also 10 Peters, 211–212–213, *Boone* v. *Chiles*.

The same doctrine is held by Judge Yager in 24 Miss., 209, *Wailes* v. *Cooper, et al.: * " In England," he says, " and so far as we are advised, in the United States also, it has been uni-

formly decided that *bona fide* purchasers for a valuable consideration, without notice, are those who are the purchasers of the legal estate, or title, and that a purchaser of a mere equitable estate is not within the definition." This rule is but a corrollary from the maxim, that where the legal estate is outstanding, equitable rights, or incumbrances, must be upheld as discharged according to their priority in time.

On this view of the situation of Jones & Eaton's title, and as a consequence, of their grantees, it is difficult to see how the protection of the rule relied on can be extended to this case, on the facts set forth in the answer, and which they admit by this demurrer.

If such is the law, it is immaterial whether the actual possession is distinctly stated to have been in Tucker or not. It is not pretended it ever was in Adam Stevens or his grantees.

Again it appears in the pleadings that the deed made by Adam Stevens to Jones & Eaton, is without covenants of warranty; it is a quitclaim, or release only of a right, conveying, it is true, whatever estate the grantor had, but has not the dignity of a common assurance.

It can not be regarded, but as the transfer of a doubtful right, and it is not within the protection of the equitable rule. In 3 Howard, 410, *Oliver, et al.* v. *Piatt*, Judge Story recognizes the doctrine first stated : " Another significant circumstance," he remarks, " is that the very agreement contains a stipulation that Oliver should give a quitclaim only for the land, and the subsequent deeds were accordingly drawn up without any warranty except against persons claiming under Oliver, or his heirs and assigns. In legal effect, therefore, they conveyed no more than Oliver's right, title, and interest in the property, and under such circumstances, it is difficult to conceive how the grantee can claim protection as a *bona fide* purchaser for a valuable consideration without notice against any title paramount to that of Oliver."

And the recording of such a deed, conveying only an equity, would not be constructive notice, as equitable titles are not required to be recorded, 3 Leigh, 365, *Doswell* v. *Buchanan's*

*ex'r;* 16 Ohio, 499, *Webster, et al.* v. *Harris, et al.;* 16 Ohio, 59, *White* v. *Denman, et al.*

As the right of Adam Stevens and his grantees is only a right to redeem, it does not follow that a court of equity would decree that the right exists from the mere exhibition of the title; they would consider all the circumstances connected with the case; the possession of the mortgagee and his acts of ownership, and the conduct of the mortgagor and his grantee, and the present claimants. From all the facts the question would eventually be determined. We have thus indicated the law, applicable to the question raised by the demurrer. Whether the evidence to be adduced, may not place the question, as to the right of the grantees of Adam Stevens to redeem, on a different ground, and present a different case, it is not for us to say. This proceeding, as it is now docketed, involves the right secured by law to every person who holds the legal title, coupled with the possession, to claim that his title shall be quieted.

The direct issue then is, whether the prayer shall be granted, and it involves at once the validity of the title of Jones & Eaton. By the judgment of the court upon that question, the whole case must necessarily be disposed of. It is immaterial whether the several defendants claim title to a part or the whole of the property; the title to the entire tract is involved, and all the persons interested are made defendants. As they are before us, we can adjudicate the whole matter, and save the rights of all the parties, whatever they may be, by our final decree.

The demurrer will be overruled, and the case may be set down for trial, at any day during the present week. If a jury is demanded, the issue for them to try, must first be made up and presented to the court.

Demurrer to answer and counterclaim overruled.