CHARLES SPIELMANN

*v.*

AUGUSTE KLIEST.

1. An assignee of a lease for years employed an attorney in executing a mortgage on his interest in the demised premises. Several years afterwards the defendant employed the same attorney to investigate the title of the same premises before taking a mortgage on the fee.—*Held,* that the defendant was not bound by the attorney's former actual notice of the existence of the lease-hold mortgage.

2. A lease for years contained a provision that the owner of the fee should pay the lessee, at the end of the term, the value of any buildings put up by the lessee on the demised premises, who afterwards erected buildings thereon. The lease was acknowledged and recorded as a deed. The lessee mortgaged his interest to the defendant during the term, which mortgage was duly registered as a mortgage of lands. At the expiration of the term, but while the lessee still remained in possession, the owner of the fee mortgaged his interest to the complainant.—*Held,* that the record of the lease and of the mortgage on the lessee's interest was constructive notice to the complainant, so as to render defendant's mortgage a prior lien on the buildings.

On final hearing on bill, answer and proofs taken before a master.

*Mr. E. D. Gillmore,* for complainant.

*Mr. John C. Besson,* for defendant.

VAN FLEET, V. C.

The decision of this case turns on a question of notice.

Joseph Spiess, on the 3d day of November, 1855, granted and demised, by formal deed, to Charles Boese, and to his executors, administrators and assigns, a term of ten years from the 1st day of May, 1856, in a certain lot of land situate in the city of Hoboken. The rent reserved was $650. The lease provided that Spiess should purchase of Boese, at the end of the term,

any and all buildings and erections of a permanent nature that Boese should, during the term, erect on the demised premises, at a valuation to be ascertained by two disinterested persons, one to be chosen by each of the parties, and in case the two could not agree, they should have the right to call to their aid a third, whose decision should be final. The lease was duly acknowledged by both parties, on the 28th of November, 1856, and recorded in the record of deeds for Hudson county, on the 6th of December, 1856. Boese, prior to 1860, erected on the rear of the demised premises, at a cost of over $3,000, a two-story brick building, which has since been used as a bar and billiard-room. On the 11th of October, 1860, the lease, together with the building and all right to compensation therefor, was assigned and conveyed, by writing under seal, to Ferdinand Kapp. This instrument was also acknowledged and recorded as a deed. The date of its record is October 13th, 1860. On the 24th of October, 1862, Ferdinand Kapp executed a mortgage on his leasehold interest, also on his right, title and estate of, in and to the building erected on the demised premises by Boese, and on his right to the value thereof, to John Roemmeth and Andrew Leicht, to secure the sum of $1,367.73, with interest. The mortgage so given was acknowledged on the 28th of October, 1862, and on the same day recorded in the record of mortgages of Hudson county. It has since been regularly assigned to the complainant.

The term granted by the lease expired on the 1st day of May, 1866, but Kapp, nevertheless, continued in possession of the demised premises from that date until the 5th day of May, 1873, as tenant, upon the terms specified in the lease to Boese, and paid rent accordingly. On the date last named (May 5th, 1873), the persons owning the fee of the demised premises conveyed their interest to Kapp, and on the next day (May 6th, 1873), Kapp and his wife executed a mortgage on the whole premises to the defendant, Auguste Kliest, to secure the sum of $8,000.

The complainant's suit is brought for the purpose of procuring an adjudication that he is entitled to have his mortgage

Spielmann v. Kliest.

debt paid out of the money due for the building erected by Boese, and also that his lien is entitled to priority over that of the defendant.

This court has repeatedly decided that the erection of permanent improvements on the demised premises by a lessee, under a covenant that he shall be paid their value, gives him a lien on the demised premises for the value of the improvements, and that such lien is a purely equitable right, which can only be enforced by a court of equity. *Copper* v. *Wells, Sax. 10; Berry* v. *Van Winkle, 1 Gr. Ch. 269; Decker* v. *Clarke, 11 C. E. Gr. 163.* The principle upon which relief is given in such cases, seems to be this, that inasmuch as a valuable addition is made to the estate of the lessor, by his authority and under his promise that he will make compensation therefor (which addition must, by force of law, pass to the lessor on the expiration of the term), it is just that the sum he has stipulated to pay should be regarded as the purchase-money of the addition, and that the lessee should have a lien on the demised premises therefor, similar to that which the vendor of land has for unpaid purchase-money. Taking this principle as the standard by which the rights of the parties must be measured, the question presented for decision would be easily solved, if the litigants before the court were the original parties to the contract, or such as were limited to their rights.

The rights of the parties hinge on a question of notice. Did the defendant take her mortgage with notice, either actual or constructive, of the complainant's rights? The defendant swears that she did not have actual notice. The lease, and its assignment to Kapp, as well as the mortgage now held by the complainant, were all acknowledged before the person who was afterwards employed by the defendant to examine the title to the demised premises, and to report to her whether she could safely take a mortgage on them or not. He, unquestionably, had full notice of the complainant's rights. As a general rule, notice to an agent is notice to his principal, but to be effectual against the principal, the notice must have come to the agent while he was concerned for his principal, or in the course of his

agency, or so soon before that it may fairly be presumed that the agent clearly recollected it when his agency was created. *Hiern v. Mill, 13 Ves. 113; Story on Agency* § *140.* Several years elapsed between the execution of the last of these papers and the time when the defendant made this person her agent; she is not, therefore, bound by what her agent, doubtless, at one time knew, but which, most probably, he had entirely forgotten long before the defendant constituted him her agent.

The decision of the case, then, must depend on a question of constructive notice. The instruments on which the complainant's claim is founded were all recorded regularly and promptly. But this will not, in all cases, constitute notice. The registration of an instrument not required by law to be recorded, is considered a voluntary and inefficacious act, and is, in judgment of law, no notice. *James v. Morey, 2 Cow. 246; Graves v. Graves, 6 Gray 391; Villard v. Robert, 1 Strobh. Eq. 393; 2 Lead. Cas. in Eq. (pt. 1) 205.* The question then is, was the lease made by Spiess to Boese, a deed or conveyance of land within the meaning of the statute respecting conveyances, so as to entitle it to be recorded? There was no express statutory authority for the registration of leases until 1872. *P. L. of 1872 p. 93.* This statute of 1872 cannot, I think, be regarded as a legislative declaration that the statutes in force at the time of its enactment did not embrace leases. The statute of 1872 may have been passed to clear up what was regarded as an obscurity or to dispel doubts. It is certain there is nothing on its face tending to show that the legislature, by its enactment, meant to declare that a lease for life was not a conveyance of lands.

The statute in force at the time the lease in question was made, declared that every deed or conveyance of or for any lands, tenements or hereditaments, to any purchaser of the same, * * * shall be void and of no effect against a subsequent judgment creditor or *bona fide* purchaser or mortgagee for a valuable consideration, not having notice thereof, unless such deed or conveyance shall be acknowledged or proved and recorded * * * within fifteen days after the delivery of the same. *Rev. Stat. 1846 p. 643* § *18.* A lease for the life of the lessee has

always been regarded as a grant of a freehold estate. Such leases would seem to be clearly within the plain letter of the statute. Blackstone defines a lease to be a conveyance of lands or tenements made for life, for years or at will. *2 Bl. Com. 317.* Cruise says a lease is a contract for the possession and profits of lands and tenements, or else it is a conveyance of lands and tenements to a person for life, for years, or at will. *Greenlf. Cruise 372 ch. V. ¶ 54.* A lease doth properly signify a demise or letting of lands common, or any hereditaments, to another for lesser time than he that doth let them hath in it. *Shep. Touch. 266.* And a demise, in its more technical meaning, is said to be a conveyance of lands for a term of years. *Comyn on L. & T., tit. Demise.* A lease is a contract in writing under seal, whereby a person having a legal estate in hereditaments, corporeal or incorporeal, conveys a portion of his interest to another. *Arch. L. & T. 2.* A lease is the grant of the possession of lands to a person for life, for years or at will. *Watkins on Conv. 425.*

A deed, to be entitled to registration under this statute, must be made to a purchaser. The language of the statute is, " every deed or conveyance of or for any lands, tenements or hereditaments, *to any purchaser of the same."* Is a lessee a purchaser ? There are but two methods known to the law by which a person can acquire a right to the possession of lands, viz., by descent and by purchase. Purchase is defined to be the possession of lands and tenements which a man hath by his own act or agreement, and not by descent from any of his ancestors or kindred. *2 Bl. Com. 241.* There are five different methods of acquiring possession by purchase : 1. Escheat. 2. Occupancy. 3. Prescription. 4. Forfeiture. 5. Alienation. *Id. 244.* And among the instruments mentioned under the head of alienation, by which a right to the possession of lands may be acquired, leases are enumerated. *Id. 310.* And Cruise says that every lessee is a purchaser by his contract and covenants. *1 Greenlf. Cruise 403 ch. I. ¶ 80.*

In the light of these definitions, it would seem that there should be no doubt that a lease for a term of ten years is a con-

veyance of lands within the meaning of the statute under con-
sideration, and, as such, entitled to be recorded. But it may be
said the books say that a lease for years confers no estate in
the lands demised by it, for though the term granted by it may
exceed the duration of many lives, yet it simply confers a term
or a mere chattel interest. This, it cannot be denied, was the
ancient view, and it is likewise undeniable that the ancient doc-
trine was founded on principles which have no application to
modern times, or to society as it exists under a republican form
of government. I think it is safe to say that in this commercial
age, which reverences fact much more than it does fiction, and
pays no special homage to any class of citizens, and bestows no
extraordinary privileges on military men, a grant which gives to
the grantee a right to the possession of lands for a term of three
or five hundred years, would be esteemed every where a great
deal more valuable, and entitled to much more consideration,
than the grant of a term to run during the successive lives of
any three mortals. And it would be so in fact. A different
estimate of the dignity or value of the two grants rests on fancy
and not on fact.

But this court is already committed on this question. The
present chancellor, in *Decker* v. *Clarke, 11 C. E. Gr. 163,* held
that our statute regulating the registry of mortgages embraces
mortgages of leasehold interest, and authorizes their registration.
That statute, it will be remembered, declares that every deed of
mortgage or conveyance in the nature of a mortgage of or for
any lands, tenements or hereditaments  *  *  *  shall be void
against any persons subsequently acquiring an interest in the
mortgaged premises, not having notice thereof, unless such mort-
gage is recorded. *Rev. p. 706 § 22.*

The chancellor, in deciding *Decker* v. *Clarke,* adopted the rule
established by the New York adjudications. As early as 1807
the court of errors of the state of New York, in construing a
statute requiring the registration "of mortgages of lands, tene-
ments and hereditaments," held that a mortgage of a leasehold
interest was within the reason and spirit of the statute, and that
the record of such a mortgage constituted notice to subsequent

Spielmann v. Kliest.

purchasers and mortgagees. Chief Justice Kent, who pronounced the opinion of the court, says : " I admit that, by the old rule of law, the words lands, tenements and hereditaments would comprehend only freehold estates and not leases for years," but he afterwards declares that it does not follow that these words must receive the same restricted construction when found in a recent statute introducing regulations on a new subject. They are large enough to reach an interest for years as well as an estate for life. He further says that mortgages of leasehold interests come clearly within the reason and spirit of the statute because they come within the mischief which the statute was intended to remedy. *Johnson* v. *Stagg, 2 Johns. 510.* As chancellor, Kent subsequently expressed the same opinion in *Berry* v. *Mutual Ins. Co., 2 Johns. Ch. 603.*

The deduction to be made from these adjudications is obvious. If a mortgage of a leasehold interest is entitled to registration, it follows, necessarily, that the lease, which is the foundation of the title, must also be recorded ; especially is this so where both statutes use the same descriptive words to define what instruments shall be recorded. Besides, the registry of a mortgage made by a person having no title on record is without legal effect as notice, for the rule is firmly established that, in order to make the registry of a mortgage notice to persons subsequently acquiring an interest in the mortgaged premises, it must appear by the record of deeds that, at the time the mortgage was executed, the person executing it had title to the mortgaged premises. *Losey* v. *Simpson, 3 Stock. 246.*

In the case just cited, Chancellor Williamson said : " When one link in the chain of title is wanting, there is no clue to guide the purchaser in his search to the next succeeding link by which the chain is continued. The title on record is the purchaser's protection, and when he has traced the title down to an individual out of whom the record does not carry it, the registry acts make that the purchaser's protection." An adjudication which decides that a mortgage of a leasehold interest is entitled to registration, also decides, in consequence of the iden-

tity of the words of the two statutes, that the lease on which the mortgage is founded is recordable.

The lease from Spiess to Boese was, in my judgment, entitled to registration under the statute in force at the time of its execution. Its record, therefore, operated as notice to all persons subsequently acquiring an interest in the demised premises.

It is an established rule of law that notice of a deed is notice of its contents. *Smallwood* v. *Lewin, 2 McCart. 60; Van Doren* v. *Robinson, 1 C. E. Gr. 256.* Notice of a memorial of any kind is notice of all its contents. *Bushell* v. *Bushell, 1 Sch. & Lef. 90; Latouche* v. *Dunsany, Id. 137.* If a party has notice of a lease, he has notice of everything contained in it. If, for instance, there is a covenant to renew, the purchaser cannot object, if he has notice of the lease, that he had no notice of that particular covenant. *Taylor* v. *Stibbert, 2 Ves. 439; Hall* v. *Smith, 14 Ves. 426.* Chancellor Green, in *Van Doren* v. *Robinson,* held that notice of a deed was notice of an agreement contained therein that the grantee should, on the happening of a certain contingency, reconvey to the grantor.

Constructive notice, under the registry acts, is as efficacious as actual notice. The purpose of those acts is to make such notice the equivalent, in all respects, of actual notice. They declare that a delinquent or careless purchaser or mortgagee shall be assumed to know what he would have learned had he explored those sources of knowledge which the law has provided for his information. The fact that the term granted by the lease in question had expired before the defendant took her mortgage, cannot, in my judgment, change the rights of the parties. The record of the lease was an important link in the chain of title. It was a conveyance by the ancestor of the persons from whom the defendant's mortgagor derived his title. No examination of the title on record could have been made without discovering it. It was the defendant's duty to search the title on record, and she is chargeable with whatever knowledge she would have obtained by the performance of that duty. In no other way can effect be given to the great remedial purpose of the registry acts.

The complainant is entitled to a decree declaring that his

mortgage is a lien, prior to that of the defendant, on the building erected on the demised premises by Boese. The evidence shows that the value of the building, at the time the lease expired, exceeded the amount now due on the complainant's mortgage. That is the time when the value of the building should be ascertained. *Berry* v. *Exrs. of Van Winkle, 1 Gr. Ch. 390.* The decree will direct the defendant to pay to the complainant the amount due on his mortgage, together with his taxed costs, within thirty days after service of a copy of the decree and costs, or in default of such payment, that the mortgaged premises shall be sold for that purpose.