ADAMS *against* DYER.

CONKLIN and others *against* DYER.

JUDGMENTS, in each of the above causes, were signed, filed, and docketed on the 8th of *October*, 1810; in the first cause, in the city of *Albany*, and, in the second cause, in the city of *New-York*. On the same day, the 8th of *October*, a *fieri facias* was issued in the first cause, and delivered to the sheriff of *Albany*, on which was endorsed, " Levy 110 dollars, with interest, from the 1st of *October*, 1810, till paid, with the sheriff's fees." Under this execution the sheriff, on the 11th of *October*, 1810, advertised the real property of the defendant for sale on the 24th day of *November*, 1810. On the 2d of *November*, 1810, a *test. fi. fa.* was received by the sheriff of *Albany* in the second cause, on which was endorsed, " Levy 166 dollars and 72 cents, besides poundage." On the 24th of *November*, the real property of the defendant was sold, and the sum of 104 dollars and 63 cents, on the first execution, paid into the hands of the sheriff. The plaintiffs, in each of the causes, claimed the money of the sheriff, on the ground that their respective judgments were docketed at an earlier hour of the same day; and affidavits as to the precise time of filing the judgment rolls, were respectively submitted to the court, with a case, containing the statement of facts. The sheriff had made a special return to each execution, stating the above facts, and that the defendants had no goods and chattels, nor any other real property, than what was sold on the 24th of *November*, and that the proceeds, being 104 dollars and 63 cents, were ready to be paid as the court might direct.

*J. Hamilton*, for *Adams*, the plaintiff in the first cause, contended, that affidavits could not, in this case, be admitted to show the particular time of docketing the judgments. The statute (sess. 24. c. 105.) has pointed out but

Where two judgments in favour of different plaintiffs against the same defendant, were filed and docketed on the same day, and one of them took out a *fi. fa.* and had the lands of the defendant seized and advertised for sale, by the sheriff, three weeks before the execution on the other judgment was delivered, and the sheriff afterwards sold the land under the advertisement; it was held, that the first *fi. fa.* having been begun to be executed, before the second was delivered to the sheriff, had gained a priority as to the time of sale, which could not be defeated by the second execution. Whether the court will inquire into the parts of a day, or receive affidavits of the exact time of filing different judgments on the same day, so as to determine the priority of the lien? *Dubitatur.* Whether the clerks ought not to mark the exact time or hour of filing judgments? *Quære.*

ALBANY,
August, 1811.

ADAMS
v.
DYER.

* Gilb. on Ex.
15.

† Burr. 1241.
1434. 950.

‡ 2 Bay's Rep.
9.

§ 1 Salk. 320.
Carthew, 419.

one mode of ascertaining the time. The judge, or officer who signs the judgment, is to set down the day and year of signing, and the *clerk* of the court is to mark, on the back of the roll or judgment, *the time* of filing the same. No other evidence but the marking of the clerk can be received, to ascertain the time of filing the judgment roll. The law allows of no fractions of a day.* There are exceptions to this rule; but they have been allowed merely to repel a fiction of law that might be injurious to the party.† But these cases do not apply to the present case, where third persons or purchasers may be affected. The plaintiffs in the two suits must be considered as standing on the same footing on the day on which the judgments were filed; and the maxim that *potior est conditio defendentis* may apply; and, as was observed by the court of appeal, in *South Carolina*,‡ in the case of *Callahan* v. *Hallowell*, the vigilant creditor is to be preferred. Here *Adams* must be considered as the *vigilant* creditor, as he first took out execution, and had the lands sold.

*Harris*, contra, in behalf of the plaintiffs in the second cause, observed, that by the act concerning mortgages, (sess. 24. c. 156.) the clerks of the counties are required to mark the *time* of registering the mortgage, and it is the practice of the clerks of the counties to note the exact *time* or *hour* of registry. As the clerks of the courts are also required to mark the *time* of *filing* the judgments, the same rule ought to be applied, and the exact time or *hour* of filing ought to be marked, and may be shown. In *Smallcomb* v. *Buckingham*,§ two writs of *fi. fa.* were delivered to the sheriff on the same day, who executed the last first, and though the execution was held good, yet the sheriff was held liable to the plaintiff in the first execution. If the sheriff is liable, in such a case, after he has paid the money over on the second execution, surely the court would, in a case where the money was not paid

over, order the sheriff to pay it to the plaintiff in the first execution. Lord *Holt*, in that case, said, that where two writs of *fieri facias* come to the sheriff on the same day, he must serve that writ first which came first, and in that case there is a *prius* and a *posterius* in the same day. If the *time* may be inquired into, in regard to executions against goods, there is a stronger reason for allowing the inquiry as to executions and *liens* against real property. Though the law does not, in general, allow the fraction of a day, yet it admits it in cases where it is necessary to distinguish.* It is a *fiction* of law which regards a term as one day, yet this fiction is disregarded, and made to yield to the fact, in order to do justice between parties. The court, in *S. C.* in *Callahan* v. *Hallowell*, which has been cited, recognised the same general principle, that in all cases where it is necessary to distinguish who, of several persons, has a priority of right, the law allows of fractions of a day. Time is in its nature divisible, as well into hours and minutes, as into years and days.

> * *Combe v. Pitt.*, *Burr.* 1423.1434. 2 *Wils.* 274.

The act says, that the land shall be bound from the *time* of filing and docketing the judgment; and the moment the judgment is filed and docketed, the *lien* is created, and cannot be removed without the consent of the plaintiff. The time of issuing the execution is immaterial. The execution first delivered to the sheriff has the preference, because the goods of the party are bound by the delivery of the writ.† But a judgment being a *lien* on lands, cannot be affected by the issuing of the execution or the delivery of it to the sheriff.

> † 1 *Term Rep.* 729.

*Hamilton*, in reply, observed, that if the clerks of the court do not mark the hour or exact *time* of filing the judgment record, they do not do their duty; for the act requires them to mark the *time*. But there can be no proof of the time of filing, but the *record* of the clerk or sworn officer. The court, then, have no means of deciding on the priority of the *lien*.

*Per Curiam.* The judgments in these cases were signed and filed on the same day, and even if the court were at liberty (of which they very much doubt, when they compare and consider the several provisions in our laws on the subject) to inquire into the fractional parts of the day, in order to see which record was first filed, the affidavits exhibited leave the point doubtful, as to the precise time of the day in which the rolls were filed, or which was, in fact, prior in time. We must then consider the judgments equal, as to the date of the *lien,* and the next question is, whether any priority hath been subsequently acquired. If one creditor first sells the lands under his judgment, he gains a preference, and is entitled to have his judgment first satisfied out of the proceeds of the sale. It would be analogous to the case mentioned in the books, of several judgments of the same term, in which one of the judgment creditors first extends the lands, and is thereby entitled to be first satisfied. (*Gilbert on Executions,* 55. *The Attorney-General* v. *Andreu, Hardres,* 23.) And has not the plaintiff, who first sued out his execution, actually gained that preference? His execution was some weeks prior, and under it the lands were regularly advertised according to law, and sold in pursuance of such advertisement. The last execution was not issued and delivered to the sheriff, until about three weeks before the sale, and the sale was not made under that execution. The statute forbids lands to be sold by virtue of any execution without six weeks' notice, and the case states that the lands were sold, and the moneys paid under the first execution. Perhaps, the mere act of delivery of the execution to the sheriff, did not gain a preference *as to the lands,* but by the act of the sheriffs in making advertisement of the lands for sale, the first execution was begun to be executed. Here was an act by which priority, in some respects, was gained. There was priority as to the time of sale, and that priority could not be defeated by the second execution.

The first execution is, therefore, under the circumstances of this case, entitled to preference, and must be first satisfied.