BARBOUR, Appellant, v. FINKE et al, Respondents.

(216 N. W. 592.)

(File No. 6410.  Opinion filed December 13, 1927.)

*Parliman & Parliman,* of Sioux Falls, for Appellant.

*Lewis Benson* and *Rice & Rice,* all of Flandreau, for Respondents.

MISER, C. This appeal involves the construction of a deed executed and delivered on April 28, 1904. The deed recites "that Fred C. Finke and Bertha Finke, husband and wife, * * * parties of the first part, for and in consideration of the sum of $1, and love and affection paid by Bertha Finke, his wife, party of the second part, * * * does hereby grant, bargain, sell and convey unto the said party of the second part forever" a quarter section of land in Moody county, S. D., therein described. We have inserted in the second paragraph letters to facilitate reference to its parts. With these additions it is as follows:

"(a) Said Fred C. Finke agrees to pay and satisfy all liens and incumbrances of every kind and nature now against said land; and (b) the said title to said land to remain in the name of Bertha Finke as long as she lives; (c) and upon her death to go to the heirs of both parties to this deed; (d) said Bertha Finke can mortgage the aforesaid land if she sees fit to do so; (e) said Fred C. Finke relinquishes all his right and title in and to said land the same as if he never owned it or had any right or title to same."

In the third paragraph, the habendum clause is as follows:

"To have and to hold the same, together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining to the said party of the second part, her heirs and assigns forever."

After the covenants of seizin and against incumbrances follows the covenant of warranty to "the said party of the second part, her heirs and assigns."

At the time of the execution and delivery of the deed, the grantor and grantee resided on the land; and Fred C. Finke was the owner thereof in fee. Bertha was the mother of four children by a former marriage. Fred was the father of seven children by a former marriage. Three children had been born as the issue of the marriage between Fred and Bertha. These fourteen children and Bertha, the grantee, were living at the time of the trial. Fred died intestate in 1912. In 1915 Bertha executed a mortgage on the land to secure her promissory note for $3,500. This mortgage was duly assigned to plaintiff and appellant herein. Default having been made in interest payments, plaintiff, in 1922, foreclosed said mortgage, naming as defendants Bertha Finke, Eli F. Finke, as an individual, and Eli F. Finke, as administrator of the estate of the said Fred C. Finke, deceased. Eli F. Finke was one of the sons of Fred C. Finke by the former marriage. The appeal from this foreclosure action is reported in 47 S. D. 644, 201 N. W. 711, 40 A. L. R. 829. On foreclosure sale, plaintiff purchased the property for the sum due.

In 1923, after the commencement of plaintiff's action to foreclose, Eli Finke brought an action against Bertha and the other thirteen children, to which action plaintiff herein was not a party. The decree in that suit quieted the title in the fourteen children, naming them therein, subject to the life estate of Bertha, and "further subject to the contingency that, if any one of said persons might die prior to the death of said Bertha Finke, in which event the fee title to said premises is quieted in each of the children of the said Frederick C. Finke and Bertha Finke, hereinbefore named, as shall be alive at the time of the death of the said Bertha Finke."

This decree quieting title in the fourteen children, and adjudging that Bertha was the owner of a mere life estate, was entered on July 26, 1923, 46 days after decree against Bertha Finke for the foreclosure of the mortgage. Whether the action by Eli Finke was commenced before or after the decree had been entered adjudging that the mortgage was a valid lien against the land is not disclosed. Inasmuch as the plaintiff was not a party

to the suit decreeing that her mortgagor was only the owner of a life estate, she was not in any event 'bound by it.

In April, 1925, no redemption having been made, and the decree of foreclosure having been affirmed by this court, sheriff's deed issued to plaintiff, who went into possession and made valuable improvements. Plaintiff, being unable to borrow money on said premises, brought the present action asking to be decreed to be the fee simple owner. In this action, all of said fourteen children, excepting Eli, who was a party to the foreclosure action, together with judgment creditors of certain of said children, are parties defendant.

The trial court adjudged plaintiff to be the owner of the life estate formerly owned by Bertha Finke, and the owner of the fee-simple title to that one-fourteenth formerly owned by Eli; that each one of the thirteen children named as defendants was the owner of an undivided one-fourteenth of said land, subject to the life estate of Bertha. The trial court also decreed that, upon the death of Bertha, she being then living, the said thirteen children "are hereby adjudged and decreed to be the owners of the entire estate in and to the said land, and to the possession, use, rents and profits thereof as tenants in common, each to an undivided one-fourteenth thereof; that the said Clara Barbour, the plaintiff, also owns a lien upon said property by virtue of the mortgage; * * * and said defendants (the thirteen children as well as judgment creditors) are entitled to redeem from said mortgage * * * until such right of redemption has been foreclosed by proper proceedings."

Plaintiff appeals herein from this decree, and claims that the deed hereinbefore described granted to Bertha an estate in fee simple; that Bertha, not only by virtue of fee-simple ownership, but by express language of the deed, was authorized to mortgage, and did mortgage the entire estate; that, in a suit to foreclose said mortgage, neither the children of Fred nor the children of Bertha by a former marriage, nor the children who were the issue of both Fred and Bertha, were proper parties; that said children need not, any more than the children or stepchildren of any other mortgagor, be made parties defendant to a foreclosure suit in order to cut off the equity of redemption. It is readily apparent that, if appellant be right in this contention, we will not be compelled to decide

whether part (c) of paragraph 2 of the deed correctly expressed the intention of the grantor with the words "heirs of both parties,"· or whether he meant "children of both parties," or whether he meant "children of each party" as the trial court interpreted said language to mean. Now, if, as appellant contends, her mortgagor not only mortgaged, but owned a fee-simple estate, will we need to decide whether "both" was intended to mean "each," nor whether a mortgagee would ever be able to foreclose the right of redemption until death finally determined the number of heirs or children.

The children are not named as parties nor otherwise mentioned by name in the deed before us. Bertha Finke alone is the party of the second part. The grant is not to them, but to the "said party of the second part forever." Nor are they mentioned in the habendum clause; but its recital is "to the said party of the second part, her heirs and assigns; forever." Nor are the covenants of seizin, against incumbrances or of warranty with the children, but with "the said party of the second part, her heirs and assigns." It is true that, by parts (b) and (c) of the second paragraph, it is stated that "the said title to said land to remain in the name of Bertha Finke as long as she lives, and upon her death to go to the heirs of both parties to this deed," but "said title," whatever it might be, is not thereby granted to "the heirs of both parties." In McGarrigle v. Roman Catholic Orphan Asylum, 145 Cal. 694, 79 P. 447, 1 L. R. A. (N. S.) 315, 104 Am. St. Rep. 84, the deed in question contained this language:

"It is the purpose of the party of the first part by this deed, that after the death of the said party of the second part, the said described lands shall become and be the property of the Roman Catholic Girls' Orphan Asylum of San Francisco."

In construing this language, the court said:

"We are of opinion that the trial court correctly construed this clause as containing no operative words of grant, and as failing to convey any present interest in the property. It will be noted that the appellant is nowhere mentioned as a grantee in the deed, and that the language of the clause itself is but an expression of the grantor's purpose in the future disposition of the property. * * * It is fundamental that, while possession or enjoyment of an estate may be deferred, a deed to be operative must pass a present interest. This was not done by the instrument in question. The

express purpose 'was—giving to it its fullest effect—that the land should become the property of the orphan asylum after the death of McGarrigle, but should not become its property before. Such attempted dispositions have been uniformly held to be inoperative in deeds."

But respondents contend that they may take as remaindermen, even though they were not named in the deed, under section 539, R. C., as follows:

"A present interest, and the benefit of a condition or covenant respecting property, may be taken by any natural person under a grant, although not named a party thereto."

We find in 9 Cal. Jurisprudence, 126, under the note to section 1085, Cal. Civ. Code:

"One may take an interest in property by virtue of a deed, though he is not named therein as a party under the code provision that 'a present interest, and the benefit of a condition or covenant respecting property, may be taken by any natural person under a grant, although not named a party thereto.' But a stranger cannot take title under a conveyance by means of an exception or reservation inserted therein in his favor. It is apparent that the code provision above quoted does not obviate the necessity for naming a grantee in the deed, as without such designation the deed would be inoperative."

What is a present interest? Section 274, R. C., is as follows:

"A present interest entitles the owner to the immediate possession of the property."

Under this statutory definition, "the heirs of both parties" certainly have no present interest in the premises in suit; for, by the express language of paragraph 2, they are not to be vested with title, much less possession, until the death of Bertha Finke. Indeed, if, by the use of the phrase, "heirs of both parties," the grantor chose words expressive of his intention, the interest, if any, conveyed to them by the other language in that paragraph is not only a future interest, under section 275, but, indeed, it may be asked whether it is not a contingent future interest, under section 280, R. C., by reason of the fact that, until the death of Bertha, the persons in whom it is limited remain uncertain. Nor is the uncertainty entirely removed by merely construing "heirs"

to mean "children," and by construing "both" to mean "each"; for, by section 330, R. C., the remainder is "to be deemed intended to take effect only on the death of the first taker." Until the death of Bertha, who can name the children who will be living at her death? Hall v. Wright, 17 Cal. App. 504, 120 P. 429. And, though, in the case at bar, the possibilities thereof be remote or absent, if the children of a former marriage come within the meaning of "heirs of both parties," why exclude the children of a subsequent marriage or children by adoption? However that may be, the necessity of naming the remaindermen in the deed before us has not been obviated by section 539, for there is here neither a present interest nor benefit of a "condition" or "covenant" respecting property. 12 C. J. 402. This court has not heretofore construed section 539, R. C.; but, in Brace v. Van Eps, 21 S. D. 65, 109 N. W. 147, it quotes with approval the following from Burchard v. Walther, 58 Neb. 542, 78 N. W. 1061:

"A reservation in a deed must be to the grantor, or to one of them, where there are two or more; but an estate cannot be created in a stranger to a deed by a reservation or recital therein."

See, also, 39 A. L. R. 129, 131.

In the case of Wolfe v. Shelley, 76 Eng. Rep. 206, 1 Co. Rep. 93B, wherein the famous Rule in Shelley's case was declared, the following rule of construction was cited as then established law:

"And such construction is always to be made of a deed that all the words (if possible) agreeable to reason and conformable to law, may take effect according to the intent of the parties without rejecting of any, or by any construction to make them void."

In Long v. Holden (Ala. Sup.) 112 So. 444, decided within the year, it is stated:

"In most of the cases the qualification is properly stated that the intention, as gathered from the language of the whole deed, will be effectuated if consistent with law. * * * This means, of course, where deeds and devises to real estate are concerned, that even a clearly stated intention will be ineffectual if the instrument does not, as to the mode of its execution, and the use of language apt for the purpose stated, meet the requirements of the law. 8 R. C. L. 1035, § 91. Culver v. Carroll, 175 Ala. 469, 479, 57 So. 767, 771 (Ann. Cas. 1914D, 103)."

18

See, also, Evenson v. Webster, 3 S. D. 382, 53 N. W. 747, 44 Am. St. Rep. 802.

Among the rules of law which would be offended by any interpretation which would take from Bertha Finke that fee-simple estate clearly conveyed by the granting clause and supported by the habendum clause and the covenants of seizin, against incumbrances and of peaceable possession, is the rule found in section 531, Rev. Code, as follows:

"A clear and distinct limitation in a grant is not controlled by other words less clear and distinct."

Also section 533, R. C.;

"A grant is to be interpreted in favor of the grantee, except that a reservation in any grant, and every grant by a public officer or body, as such, to a private party, is to be interpreted in favor of the grantor."

Neither exception therein is applicable to the second paragraph of the deed in question.

If clauses (b) and (c) granted a vested remainder in the fourteen children, none of whom were parties to the deed or named therein, then "both" meant "each," "heirs" meant, not only "children" but "children living at the date of this deed," and paragraph 2 overcame the plain intendment of every other clause in the deed. If clauses (b) and (c) granted a contingent remainder to such persons of a class as should be alive at the death of Bertha, the mortgagee or mortgagees could not know until the death of Bertha who the remaindermen might be that should be made parties defendant to the suit in foreclosure. If the "heirs of both parties," whoever they might be, were now to tender, as they have not done, the sum required to redeem from appellant's mortgage, what assurance have they that under clause (d) Bertha may not again mortgage the premises? Had Fred merely granted to Bertha a life estate, that life estate might have been mortgaged, and the mortgage foreclosed without affecting the estate in remainder. Though Bertha would have thereby lost her life estate, upon her death the remainder would have gone to the remaindermen undiminished. Nor is the fact that, on the date of the deed, every one of the fourteen children were living, and might have been named, and were not, without significance. This significance is not lessened by the fact that, in the deed made five years before,

construed by this court in Finke v. Finke, 37 S. D. 46, 156 N. W. 595, Fred Finke named by name each of the seven children of his former marriage, and the two children then living of his marriage with Bertha, and made careful provision that the children thereafter to be born of said marriage share in the estate. It should be remarked in passing that, in that opinion, it was observed that "Bertha Finke, although named as a beneficiary of the trust, was not a grantee in the deed."

The hopeless irreconcilability of various clauses in the second paragraph, even among themselves, furnishes abundant reason why section 531 and section 533, R. C.—special provisions for the interpretation of grants—should be applied.

We therefore conclude that the clear and distinct limitation in the grant to Bertha Finke, "the said party of the second part forever" cannot be controlled by words so much less clear and distinct as are those of the second paragraph. If the language used in that doubtful second paragraph was not so inapt as to preclude speculation as to the grantor's intention, might it not well be that no mere grant of a life estate was intended, but a grant in fee simple, coupled with an abortive attempt on the part of Fred to prescribe the contents of Bertha's will? Whatever his secret intention, the language he used in that doubtful second paragraph was so inapt and lacking in clearness that we cannot permit it to control the "clear and distinct limitation" of the first and third paragraphs. The security of titles demands, in the interpretation of grants, the application of those rules of which section 531 is one. As was stated in Brown v. Brown, 66 Me. 320, quoted with approval in Long v. Holden, supra:

"The law has prescribed certain plain rules to be observed in the execution of such important instruments as those by which the title to real property is transferred; and whatever courts may sometimes have done in their zeal to carry into effect the intention of parties, the law itself does not permit its salutary rules to be broken or bent to meet the exigencies of ignorance or negligence; deeming it better on the whole that the intention of a party in disposing of his property should occasionally fail, than that its important and firmly established rules made and applied for the benefit of all be over-ridden."

Judgment reversed and remanded, with instructions to enter

decree quieting title in fee-simple in appellant, and decreeing that respondents have no interest or estate therein.

CAMPBELL, P. J., and POLLEY, SHERWOOD, BURCH, and BROWN, JJ., concur.