THERESA ZINK, et al., Respondents, v. JAMES RIVER NA-
TIONAL BANK, a National Banking Corporation, et al., and
Salzer Lumber Company, a Corporation, Appellant.

(224 N. W. 901.)

Opinion filed April 8, 1929.

*Conmy, Soule, & Pierce,* for appellant.

*C. B. Craven,* for respondents.

CHRISTIANSON, J. This is a controversy between judgment creditors of the plaintiff, Franz E. Zink, and involves the questions whether, and in what circumstances, a judgment becomes a lien on lands acquired by the owner subsequent to the rendition and docketing of a judgment against him. The material facts in the case are not in dispute. They are as follows: On November 27, 1920, a judgment was docketed in the office of the clerk of the district court of Foster county in favor of the plaintiff, The Foster County State Bank, and against said Franz E. Zink, in the sum of $786.65; on October 4, 1921, a judgment was docketed in the office of the clerk of the district court of Foster county in favor of the defendant, Salzer Lumber Company, and against said Franz E. Zink, in the sum of $1,163. On June 5, 1923, Peter P. Zink, Sr., the father of Franz E. Zink, died intestate leaving surviving him as his heirs at law the above named individual plaintiffs; and the said Franz E. Zink inherited an undivided two-fifteenths interest in all the real estate belonging to his father at the time of his death. Execution was issued on the judgment docketed in favor of the defendant, Salzer Lumber Company, and on December 22, 1924, all the right, title and interest of the said Franz E. Zink, in and to all the real estate belonging to Peter P. Zink, Sr., at the time of his death, was sold for the full amount due upon such judgment and the execution was thereupon returned fully satisfied. About a year later execution was issued upon the judgment docketed in favor of the plaintiff, The Foster County State Bank, and on December 21, 1925 all the right, title and interest of the plaintiff, Franz E. Zink,

in and to the same real estate was sold for the full amount due upon such judgment, and the execution was returned fully satisfied.

On January 3, 1928 the county court of Foster county duly entered a final decree of distribution in the estate of Peter P. Zink, Sr., deceased, whereby the residue of the estate in the hands of the administrator, including all real property, was distributed among the heirs of Peter P. Zink, Sr. No appeal was taken from such decree. According to its provisions the real property was distributed among the heirs in this manner; certain specified tracts of land were assigned and set over to each of the heirs. This action involves the lands that were so set over to the plaintiff Franz E. Zink.

The ultimate question presented for determination on this appeal is: What are the rights of the respective purchasers at the sales held under the executions issued upon the two judgments against Franz E. Zink?

Appellant and respondents are agreed that the judgments became liens upon Franz E. Zink's interest in the real property (John Leslie Paper Co. v. Wheeler, 23 N. D. 477, 42 L.R.A.(N.S.) 292, 137 N. W. 412; 2 Freeman, Judgm. 5th ed. § 958, subject, of course, to an equitable lien for any indebtedness of Franz E. Zink to the estate (Stenson v. H. S. Halvorson Co. 28 N. D. 151, L.R.A.1915A, 1179, 147 N. W. 800, Ann. Cas. 1916D, 1289); but they differ as to which judgment had, or has, priority.

Plaintiffs contend that judgments attach as liens, against real property subsequently acquired by the debtor in the county in which judgments are docketed, in order of their docketing; that inasmuch as the judgment of the Foster County State Bank was first docketed it became and was a lien upon the real property of Franz E. Zink prior to the lien of the judgment of the defendant Salzer Lumber Company; and that, consequently, the sales held under the execution issued upon such former judgment will, unless redemption is made, devest the lien of the judgment of the Salzer Lumber Company. The trial court sustained this contention of the plaintiff and rendered judgment accordingly.

It is the contention of the appellant, Salzer Lumber Company:

(1) That judgments do not attach as liens upon subsequently acquired real estate in the order of their docketing; that all docketed judg-

ments attach as liens upon such after-acquired real property upon the acquisition thereof by the judgment debtor; and that consequently the two judgments involved here became and were liens of equal rank, and that neither judgment had priority over the other.

(2) That while such judgments were liens of equal rank, the judgment creditor who first caused execution to be issued and levied upon such after-acquired lands obtained a priority of lien thereon. These contentions will be considered in the order stated.

(1) Under the laws of this state a judgment is made a lien on after-acquired real estate. So far as material here our statute (Comp. Laws 1913, § 7691) provides:

"On filing a judgment roll upon a judgment directing in whole or in part the payment of money, it may be docketed with the clerk of the court, in which it was rendered, in a book to be known as the judgment docket, and in any other county upon filing with the clerk of the district court for said county a transcript of the original docket, and it shall be a lien on all the real property except the homestead in the county where the same is so docketed of every person against whom any such judgment shall be rendered, which he may have at the time of the docketing thereof in the county in which such real property is situated or which he shall acquire at any time thereafter, for ten years from the time of docketing the same in the county where it was rendered. . . ."

Obviously the lien of a judgment cannot attach to land in which the judgment debtor has no interest. Hence, a judgment cannot attach as a lien against after-acquired real property until the property is acquired by the judgment debtor. This being so it, of course, follows that where judgments against the same judgment debtor are obtained at different times in favor of different persons, such judgments all become liens at the same instant upon real property thereafter acquired by him. It also would seem to follow that such judgments all become liens of equal rank and that no judgment has priority over another; and this is the rule established by the great weight of authority under statutory provisions quite similar to our own. 2 Freeman, Judgm. 5th ed. § 981; 15 R. C. L. p. 802; 34 C. J. p. 602.

So far as we can ascertain, the only court to reach the conclusion that such judgments are not of equal rank, but become liens upon

after-acquired real property in the order of the dates of their docketing is the supreme court of Oregon. Creighton v. Leeds, 9 Or. 215. This holding was based upon a statute of Oregon which provided:

"From the date of the docketing of a judgment as in this title provided, or a transcript thereof, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which may be afterwards acquired therein." 9 Or. 216.

The Oregon court said that under this "statute there is a present inchoate right of lien created, *per verba de presenti,* to take effect by relation when the property is acquired. The statute does not say there shall be a lien from the date of the acquisition of the property. It expressly makes the lien upon after-acquired property date from the date of the docketing of the judgment." 9 Or. 220.

Some courts have made unfavorable criticism of the Oregon case. We find it unnecessary to either approve or disapprove of that decision. It will be noted that the Oregon statute is quite different from our own and seems to furnish some basis for the inference that the legislature intended that the lien provided thereby should become effective "from the date of the docketing" of a judgment. There is no similar language in our statute and we find nothing therein to indicate any legislative intention that the lien of a judgment upon after-acquired real estate shall, as it were, relate back to the date of the docketing. The doctrine of relation is a fiction of law adopted by the courts solely for the purpose of justice (Gibson v. Chouteau, 13 Wall. 92, 20 L. ed. 534; Hussman v. Durham, 165 U. S. 144, 41 L. ed. 664, 17 Sup. Ct. Rep. 253; and its root must be planted in some antecedent lawful right. United States v. Atchison, T. & S. F. R. Co. [C. C.] 142 Fed. 187).

The lien of a judgment exists by operation of law and not by virtue of any agreement on the part of the judgment debtor. The inherent differences between a lien created by contract and the lien of a judgment seem obvious and are generally recognized. "The holder of a lien created by a contract *in rem,* deals concerning a specific thing; he parts with the consideration upon the security of that specific thing; he obtains an equitable interest in that specific thing. The judgment creditor has not dealt with that specific thing; he has not parted with

value in contemplation of it; his lien is general, and not confined to it." 2 Pom. Eq. Jur. 4th ed. § 685. In the absence of statutory provision to the contrary, the lien of a judgment attaches only to the debtor's real interest in the real property and not to his apparent interest. Leonard v. Fleming, 13 N. D. 629, 102 N. W. 308; 2 Freeman, Judgm. 5th ed. §§ 950, 969, 970. In other words, in the absence of statutory provision to the contrary, a judgment creditor is not, prior to the sale of property under execution issued upon his judgment, entitled to protection as a purchaser. 2 Freeman, Judgm. 5th ed. §§ 950, 970. (This rule has been changed in this state by statutory enactment so that an attachment or judgment creditor is placed on the same footing as a purchaser, under the recording acts. Comp. Laws 1913, § 5594; Merchants State Bank v. Tufts, 14 N. D. 238, 116 Am. St. Rep. 682, 103 N. W. 760). Under our laws a mortgage on real property, not yet acquired by the mortgagor, is made a lien *in praesenti* and becomes effective and takes priority as against other liens subsequently created by the mortgagor according to the date of its execution and delivery, or its registry as the case may be. Comp. Laws 1913, § 6731; Adam v. McClintock, 21 N. D. 483, 131 N. W. 394. See also Thompson Yards v. Richardson, 51 N. D. 241, 199 N. W. 863; 2 Pom. Eq. Jur. 4th ed. § 685; 19 R. C. L. p. 408. There is nothing of similar import in the laws of this state relating to judgments. In a word, there is nothing to indicate that the legislature intended to provide that judgments should attach as liens upon after-acquired real property in order of the time of their docketing.

In the absence of language indicative of such intent it can not be assumed that the legislature intended to give one of several liens that attached to the property at the same instant priority over the others; nor should it be assumed that the legislature intended to adopt a rule in this state wholly different from that then prevailing throughout the country, in jurisdictions where docketed judgments were made liens on after-acquired real property.

Respondents argue, however, that § 6714, Comp. Laws 1913, evidences a legislative intention to provide that judgments shall become liens in order of their docketing. The section reads:

"Other things being equal, different liens upon the same property

have priority according to the time of their creation except in cases of bottomry and respondentia."

In our opinion this section does not in any manner affect the status of the lien of a judgment upon after-acquired real property. The section was adopted in this jurisdiction in its present form as a part of the civil code of the Territory of Dakota of 1877 (Civ. Code, 1877, § 1711). It originally appeared in what is known as the Field Code. See § 1458 Draft of a Civil Code for the State of New York, prepared by the commissioners of the Code, 1862. And, according to the annotation of the commissioners appended thereto, it was intended to embody in statutory form the principle announced in Berry v. Mutual Ins. Co. 2 Johns. Ch. 608. That case involved a controversy between the mortgagee in a mortgage given by the holder of a leasehold interest and a subsequent assignee of the lease. The question was: Which had priority? The court held that the maxim: *"Qui prior est tempore, polior est jure"* (He who is prior in time is stronger in right); and "Between equal equities, the first in order of time shall prevail," were applicable and controlling. Hence, it seems clear that section 6714 was not intended to change the existing law, but merely to declare, in statutory form, the rule of priorities (2 Pom. Eq. Jur. 4th ed. § 687; Broom, Legal Maxims, pp. 353, et seq.) embodied in these maxims of jurisprudence, as applied to liens.

(2) Did the Salzer Lumber Company obtain priority by reason of having execution issued first, and sale made thereunder of Franz E. Zink's interest in the real property? In our opinion this question must be answered in the negative. Under the express provisions of the statute a judgment upon being docketed becomes a lien against all real property of the judgment debtor,—both that which he then owns and that which he subsequently acquires. The judgment may be docketed in the county in which it is rendered upon the rendition of the judgment. It may be docketed in any other county in the state upon filing of a transcript of the original docket. Section 7691, supra. As regards property then owned by the judgment debtor in the county in which the judgment is so docketed the lien comes into being the instant the judgment is docketed; and as regards property which the judgment debtor subsequently acquires, the lien comes into existence the moment the property is acquired. It is the docketing of the judgment that

creates the lien; not the issuance of, or levy under, an execution. The execution is the remedy for the enforcement of the lien but does not create the lien.

The courts all seem agreed that where a judgment is made a lien upon real estate, the issuance of, or levy and sale under, an execution in no wise affect the lien of a prior judgment, or necessitate any change in the proceedings required to make such lien effectual. 2 Freeman, Judgm. 5th ed. § 984.

"According to general principles," said Chief Justice Ewing (Reeves v. Johnson, 12 N. J. L. 29), "a lien, when vested, remains until legally removed. It is not defeated or weakened, nor are the legal measures to enforce it or satisfy or discharge it, precluded or frustrated by the occurrence of a subsequent lien."

The same question was considered and the same rule announced by the Supreme Court of the United States in Rankin v. Scott, 12 Wheat. 177, 6 L. ed. 593. That case involved judgments of the courts of the territory of Missouri. The local statute, so far as material here, provided: "Judgments obtained . . . shall be a lien on the lands and tenements of the person or persons against whom the same has been entered, . . . situate in such district." Two judgments were obtained against the same debtor by two different plaintiffs. The judgments were docketed on different dates. Execution was first issued upon the latter judgment and certain real property sold thereunder. Subsequently execution was issued upon the first judgment and the property sold thereunder. A controversy arose as to the rights acquired under the deeds issued pursuant to the respective sales. In the opinion in that case the Supreme Court of the United States said:

"By that law (the law of Missouri) judgments are to be a lien on all the lands of the debtor. This lien commences with the judgment, and continues for five years. The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant. *The single circumstance of not proceeding on it until a subsequent lien has been obtained and carried into execution, has never been considered as such an act.* Take the common case of mortgages. It

has never been supposed that a subsequent mortgage could, by obtaining and executing a decree for the sale of the mortgaged property, obtain precedence over a prior mortgage in which all the requisites of the law had been observed. If such a decree should be made without preserving the rights of the prior mortgagee, the property would remain subject to those rights in the hands of the purchaser. So, in cases of judgment, where an elegit may be sued out against the lands of the debtor. The implied lien created by the first judgment retains the preference over the lien created by a second judgment, so long as an elegit can issue on the first. A statutory lien is as binding as a mortgage, and has the same capacity to hold the land so long as the statute preserves it in force." (Italics ours).

Notwithstanding the universal acceptance of the rule that the lien of a prior judgment is in no manner affected by levy and sale under execution issued upon a junior judgment—(except where such rule has been changed by statute—Reeves v. Johnson, 12 N. J. L. 29, 31)— a number, and apparently the greater number, of courts have held that where two or more judgments on account of their contemporaneous docketing become liens of equal rank, the equality may be destroyed and priority given to the judgment creditor who first attempts to subject any specific real property to the payment of his judgment lien by means of levy and sale under execution issued thereon. An examination of the various authorities sustaining this rule (2 Freeman, Judgm. § 982; Smith v. Lind, 29 Ill. 24; Bruce v. Vogel, 38 Mo. 101; Michaels v. Boyd, 1 Ind. 259; Elston v. Castor, 101 Ind. 426, 51 Am. Rep. 754; Burney v. Boyett, 1 How. (Miss.) 39) discloses that they are based on two New York decisions: Adams v. Dyer, 8 Johns. 347, 350, 5 Am. Dec. 344; and Waterman v. Haskin, 11 Johns. 228. The New York Court of Appeals in the recent case of Hulbert v. Hulbert, 216 N. Y. 430, L.R.A.1916D, 661, 111 N. E. 70, Ann. Cas. 1917D, 180, had occasion to re-examine the doctrine announced in these two cases and specifically departed therefrom and announced the law of New York to be: That judgments docketed at different times attach simultaneously to real estate subsequently acquired by the judgment debtor and consequently become liens of equal rank; that the equality of such judgment liens is not affected by the issuance of execution upon one of the judgments and sale of the real property under such execu-

tion. In reaching this conclusion the New York court of appeals pointed out that at the time the decision in Adams v. Dyer was handed down the laws of New York did not provide that a judgment should be a lien upon the real estate or other property of the judgment debtor. In other words, that at the time the decision was rendered in Adams v. Dyer, supra, it was the levy of the execution and not the docketing of a judgment which subjected real property of the judgment debtor to a lien. We shall not attempt to enter into any further discussion of the reasons given by the New York court of appeals in Hulbert v. Hulbert, supra, for departing from the rule originally established in that state by Adams v. Dyer, supra, and (as it is held) erroneously adhered to after the enactment of a statute providing that a judgment should be a lien upon the real property of the judgment debtor from the date of docketing. The facts in Hulbert v. Hulbert are strikingly similar to those in the case at bar. That case also involved judgments docketed against a debtor who subsequently acquired an interest in real property upon the death of his father. Execution was issued upon one of the judgments and sale made thereunder of the judgment debtor's interest in the real property inherited from his father. A controversy arose there, as here, as to whether such sale devested the lien of the judgments on which execution had not issued. The decision in the Hulbert case is a most excellent exposition of the law on the subject under consideration and is directly applicable under the statutory provisions of our state. Under the rule there announced judgments that become liens against after-acquired real property attach thereto at the time of the acquisition of such property by the judgment debtor, and, hence, become liens of equal rank, and such equality is not destroyed by the act of one of the judgment creditors in causing execution to be issued upon his judgment and sale held thereunder. We believe this to be the correct rule. We fail to see any logical reason why a valid lien should become impaired by an act of the holder of another lien of equal rank. It is well settled as regards mortgages that the foreclosure of one of two simultaneous mortgages does not give any priority to the mortgage which is foreclosed. Van Aken v. Gleason, 34 Mich. 477; State Finance Co. v. Halstenson, 17 N. D. 145, 114 N. W. 724. The analogy between mortgages and judgments suggested by Chief Justice Marshall in Rankin v. Scott,

supra, as regards senior and junior liens and the rules announced as regards the respective rights of the holders of such liens seem equally applicable as regards liens of equal rank.

"The diligence of a junior judgment creditor could not affect the lien of a senior judgment creditor, and, if it could not affect the lien of a senior judgment creditor, it cannot affect the lien of equal rank." Hulbert v. Hulbert, supra.

Under our laws a judgment when docketed becomes at once a lien upon all real estate then belonging to the judgment debtor; as soon as he afterwards acquires any real property in the county in which the judgment is docketed, it also becomes a lien on such real property.

The lien so created continues without any further action on the part of the judgment creditor for a period of ten years from the time of the docketing of the judgment in the county in which it was rendered. There is no suggestion in the statute that the continued existence or force of a judgment lien once acquired is dependent upon any action of the judgment creditor. The lien is not impaired by his delay in enforcing it unless the delay continues beyond the time fixed by the statute; it stands in no different position from any other lien; he may enforce it when he desires but inaction on his part neither impairs nor discharges the lien, except as prescribed by the statute.

This is not a case where the judgment debtor merely had an equitable interest or estate in the real property,—i. e., an interest not subject to the lien of the judgment—and which could be reached only by levy under an execution. Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976. Nor is it a case where it was necessary to pursue the property of the debtor by means of proceedings outside of the execution, and the existence of the lien and the right to subject the property of the judgment debtor to satisfaction thereof was dependent upon certain facts outside of the record. In this case no act on the part of the judgment creditor was necessary to subject the property in question to the lien of the judgment. The lien attached the moment the property was acquired by the judgment debtor and it remained in full force and effect without any further act on the part of the judgment creditor; and it will so remain unless and until the lien is divested in some manner provided by law; —such as the enforcement and satisfaction of the lien, the expiration

of the time prescribed by law for its enforcement, or the disposition of the property under some prior lien. In these circumstances the principle that equity favors the diligent has no application.

It follows from what has been said that the judgments were and are liens of equal rank against the after-acquired property of the plaintiff, Franz E. Zink, and that neither judgment has priority over the other.

It further follows that this equality was not destroyed because one of such judgment creditors caused execution to be issued upon its judgment and sale held thereunder. The liens still remain in full force and effect, of equal rank, and the rights of the purchaser acquired at such execution sale are subject to the rights of the holder of the other judgment lien. The judgment appealed from must therefore be, and the same hereby is, reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.