MURPHY, Respondent and Cross-Appellant v. CONNOLLY et al., Appellants

(140 N.W.2d 394)

(File Nos. 10208, 10209.   Opinion filed February 23, 1966)

Rehearing denied May 4, 1966

**Everett A. Bogue** of **Bogue & Weeks,** Vermillion, for plaintiff, respondent and cross-appellant.

**Christensen & Christensen,** Elk Point, for defendants and appellants.

LUND, Circuit Judge. This is an action to quiet title to an undivided one-eighth interest in eighty acres of land in Union County and for partition. Findings of fact and judgment were entered quieting title in the plaintiff and dismissing plaintiff's demand for partition, without prejudice. Defendants appeal from the judgment quieting title, and plaintiff cross-appeals from that portion of the judgment denying partition.

The material facts in the case are undisputed and appear from the record as follows:

On January 27, 1914, the County Court of Union County entered a decree of distribution in the estate of Bridget Carey, distributing the eighty acres involved in this action to her son, Frank Carey, for life, with remainder to his heirs. Frank Carey died December 28, 1929, leaving eight heirs, one of whom was his brother Joseph Carey.

On March 30, 1923, one L. N. Lewison obtained a money judgment in justice court against Joseph Carey for $83.43. A transcript of this judgment was filed and docketed in the Clerk of Courts office in Union County on September 1, 1927. Execution was issued on this judgment and on February 21, 1930, all of the right, title and interest of Joseph Carey in said real estate was sold to the judgment creditor, L. N. Lewison, for the sum of $139.00, and the execution was returned fully satisfied. Order confirming sale was entered and filed on April 7, 1930. A sheriff's deed was issued to L. N. Lewison on March 3, 1931. Thereafter on March 1, 1952, Lewison conveyed all of his right, title and interest in the premises by quitclaim deed to the defendants, Alice J. and Ellen B. Connolly.

On May 13, 1925, Ringsrud Mercantile Company recovered a judgment against Joseph Carey in the amount of $343.32 which was docketed on the same day in the office of the Clerk of Courts of Union County. Thereafter, pursuant to an execution issued on said judgment and on March 15, 1930, the undivided one-eighth interest owned by Joseph Carey in and to said real estate was sold to the judgment creditor, Ringsrud Mercantile Company for the sum of $488.94, being the full amount due on said judgment, and the execution was returned fully satisfied.

No order confirming sale was ever entered or filed as provided by Section 2681, R.C.1919, now SDC 1960 Supp. 33.2013. A sheriff's deed was thereafter issued to the purchaser on April 14, 1931.

Defendants' various assignments of error are argued under two points:

Under point one, their first contention is that the execution sale under the Ringsrud judgment is void because of the failure of the court to make and enter an order confirming sale as required by Section 2681, R.C.1919, supra.

Their second contention is that upon the death of the life tenant the estate of Joseph Carey "changed from a vested remainder to a vested fee simple, and the vested remainder terminated and became the vested fee simple" creating a new estate, and that the lien of both judgments then attached simultaneously as equal liens in the same manner as provided in the case of after-acquired property, and that priority of judgment liens in such cases is determined either by priority of execution and sale or by the dates of the judgments. We will discuss the questions presented under point one, in the order above indicated. Statutory citations are to the 1919 Revised Code then in effect with corresponding sections of the present 1939 Code thereafter.

As to the first contention, this court has repeatedly held that an order of confirmation of sale is only for the purpose of determining the regularity of the execution sale proceedings as they appear of record, and such order determines nothing as to the validity of the title. Baxter v. O'Leary, 10 S.D. 150, 72 N.W. 91; Langeberg v. Perry, 62 S.D. 286, 252 N.W. 882.

In this connection we also call attention to Section 2692, R.C.1919, (SDC 33.2202) which so far as material in this case, provides:

"Upon the expiration of the period for redemption, the sheriff or other officer who made the sale, his successor, or some other person appointed by the Court for that purpose, must make the purchaser, or the party entitled thereto, a deed of the real property sold. The deed

shall be sufficient evidence of the legality of such sale and the proceedings therein, until the contrary is proved, and shall vest in the purchaser, or other party as aforesaid, as good and as perfect title in the premises therein described as was vested in the debtor at or after the time when such real property became liable to the satisfaction of the judgment."

The above statute makes a sheriff's deed prima facie evidence of the legality of the sale. Baxter v. O'Leary, supra. Defendants' first contention is therefore without merit.

Defendants' second contention presents the decisive question to be determined under point one, which is, what are the rights of the respective purchasers at the execution sales under the two judgments against Joseph Carey and upon which sheriff's deeds have been issued?

It is conceded by the parties that both judgments attached as liens upon Joseph Carey's interest in the real property, but they differ as to the time when such judgments became liens, and also as to which lien, if either, has priority.

So far as material here, our statute Section 2569, R.C.1919 (SDC 33.1717) provides:

"On filing a judgment roll upon a judgment of the Circuit Court directing in whole or in part the payment of money, it shall be docketed with the clerk of the court in which it was rendered, in a book to be known as the judgment docket, and in any other county upon filing with the clerk of courts for that county a transcript of the original docket, and it shall be a lien on all the real property, except the homestead, in the county where the same is so docketed, of every person against whom any such judgment shall be rendered, and which he may have at the time of the docketing thereof in the county in which such real property is situated, or which he shall acquire at any time thereafter, for ten years from the time of docketing the same in the county where it was rendered   *   *   *".

It is also provided by statute that from the time of the docketing of a certified transcript of a justice court judgment, in the office of the clerk of courts of the county in which the judgment was rendered, it becomes a judgment of the circuit court. Section 2579, R.C.1919 (SDC 33.1713).

The crucial question as to the time when the two judgments attached as liens to Joseph Carey's one-eighth interest in the real property involved, and the further question of priority, necessarily depends upon the character of the remainder devised to the "heirs" of the life tenant Frank Carey.

The problem of distinguishing between vested and contingent remainders is often extremely difficult; however, the following statutory definitions are pertinent:

"A future interest is either: ·

1. Vested; or,

2. Contingent." § 278, R.C.1919 (SDC 51.0217).

"A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest." § 279, R.C.1919 (SDC 51.0217).

"A future interest is contingent while the person in whom, or the event upon which, it is limited to take effect remains uncertain." § 280, R.C.1919 (SDC 51.0217).

"A mere possibility, such as the expectancy of an heir apparent, is not deemed an interest of any kind." § 285, R.C.1919 (SDC 51.0222).

In 33 Am.Jur. at page 601, § 140, it is said:

"A remainder to the heirs of the life tenant is generally a contingent remainder, for there can be no heirs to a living person, and until the termination of the life estate no one can claim as the heir of the life tenant."

Professor Walsh in his Commentaries on the Law of Real Property, § 292, says:

> "Where land is granted or devised to A for life, remainder to his heirs   *   *   the remainder is necessarily contingent since there are no persons in existence before the life tenant's death who answer the description of the deed or will in whom the remainders can vest   *   *   Before a man's death he has no heirs."

Other authorities are in accord with this view. Tiffany on Real Property, Third Edition, § 321; Powell on Real Property (1950) § 327; Henkel v. Auchstetter, 240 Iowa 1367, 39 N.W.2d 650, 658.

It is noted that in California with identical statutes as ours the courts have concluded instruments conveying title to heirs of a life tenant create a contingent remainder. Hall v. Wright, 17 Cal.App. 502, 120 P. 429, cited in Barbour v. Finke, 52 S.D. 11, 216 N.W. 592; In re Washburn's Estate, 11 Cal.App. 735, 106 P. 415 and In re Shoemake, 211 Cal. 457, 295 P. 830. Some of those opinions attempt to further define vested and contingent interests. In the Washburn opinion the court wrote:

> "There is no subject of the law more abstruse, or in which greater refinement of learning has been displayed, than that of remainders. No definitions ever have been, or ever will be, given which will relieve all cases from doubt. Mr. Kent commends Mr. Blackstone's treatment as far surpassing all others for its 'perspicuity, simplicity, comprehension, compactness, exactness, accuracy, and admirable precision.' And yet he adds: 'I have read the chapter frequently, but never without a mixture of delight and despair.' 4 Kent's Com. 208, note (14th Ed., by Mr. Gould)".

We believe it inadvisable to further define or explain them and are content to conclude the remainder limited to the "heirs of Frank Carey" was a contingent future interest as there was an uncertainty as to the person or persons who would be entitled to enjoy the remainder, and since the uncertainty at the time of the creation of the contingent remainder continued

to exist until the death of the life tenant, it did not and could not vest until his death, because he could have no heirs prior to his death. See also, Hawkins & Roberts v. Jerman, 147 Or. 657, 35 P.2d 248; Roberts, J. dissenting in Tillotson v. Carpenter, 61 S.D. 570, 576, 250 N.W. 339, 341, and cases and annotations in 131 A.L.R. 712; 144 A.L.R. 763; 19 A.L.R.2d 371 and 65 A.L.R.2d 1400. In Burton v. Kinney, 191 Tenn. 1, 231 S.W.2d 356, 19 A.L.R.2d 366, the court distinguishes remainders to the heirs of testator and the life tenant, declaring the former as vested, the latter as contingent.

Having arrived at the conclusion that the remainder limited to the heirs of Frank Carey was a contingent remainder and that the same did not vest until the death of Frank Carey, the judgment liens did not attach to the property until the title vested and under the provisions of Section 2569, R.C.1919, supra, said judgment liens attached simultaneously in the same manner as to after-acquired property. See Zink v. James River Nat. Bank, 58 N.D. 1, 224 N.W. 901, 67 A.L.R. 1294, with annotation 1301 and In re Clausen's Estate, Iowa, 139 N.W.2d 196.

It is clearly obvious that a judgment lien cannot attach to land in which the judgment debtor has no interest since by statute " 'A mere possibility, such as the expectancy of an heir apparent is not deemed an interest of any kind.' " Avon State Bank v. Commercial & Savings Bank, 49 S.D. 575, 207 N.W. 654, 44 A.L.R. 1462.

The North Dakota court, in the case of Zink v. James River Nat. Bank, supra, in a very comprehensive and well-reasoned exposition of the law on the subject under consideration, and after reviewing the decisions of many jurisdictions, states what appears to be the general rule, that judgments become liens against after-acquired property at the time of the acquisition of such property by the judgment debtor, and hence become liens of equal rank and such equality is not destroyed by the act of one of the judgment creditors in causing execution to be issued upon his judgment and sale held thereunder, and that such liens remain in full force and effect, of equal rank, and that the rights of a purchaser acquired at such execu-

tion sale are subject to the rights of the holder of the other judgment lien.

It is stated in 49 C.J.S. Judgments § 484 b page 924 as follows:

"Although there is some authority to the contrary, it has generally been held that, if several judgments are entered against the same debtor at different times, and he afterward acquires the legal title to real estate, the liens of the several judgments attach together on the property at the same instant, and there are therefore no priorities between them; nor can one judgment creditor obtain priority by obtaining execution and sale of such property."

In Ware v. Delahaye, 95 Iowa 667, 64 N.W. 640, it was held in respect to the proceeds of the sale of the property that "the plain principle of reason and of law in such a case is that the fund shall be distributed among them all pari passu." See also Gay v. Rainey, 89 Ill. 221, 31 Am.Rep. 76.

We believe these decisions set forth the correct rule and it is therefore our conclusion that the interest of the parties in the real estate is in proportion to the amounts of their respective liens. In other words, they share pro rata.

■■ Under point two, defendants' contention is that title should not be quieted in the plaintiff because he has failed to prove adverse possession under color of title and payment of taxes for a ten-year period. In considering this contention it is sufficient to state that at the time of the issuance of the sheriff's deeds to the property here involved, the grantees became tenants in common, and the possession of one cotenant is presumptively the possession of all and inures to the benefit of all.

In Satterlee v. Umenthum, 47 S.D. 372, 198 N.W. 823, it was held that "under the doctrine of tenancy in common, each cotenant is entitled to the possession of the property, an action in ejectment cannot be maintained by one against the other unless the latter has ousted the former from possession." In this case no facts were alleged or proved constituting an ouster of de-

fendants by the plaintiff. Mercer v. Wayman, 9 Ill.2d 441, 137 N.E.2d 815, held that:

"the mere possession by one tenant in common who receives all the rents and profits and pays the taxes assessed against the property, no matter for how long a period, cannot be set up as a bar against the cotenants. In such case the possession of one tenant in common is in contemplation of law the possession of all the tenants in common."

We now come to the issue presented by the cross-appeal from that portion of the judgment denying plaintiff's prayer for partition.

SDC 37.1401 authorizes partition when several cotenants are in possession of real property as tenants in common according to the respective rights of the persons interested therein, and provides that an action may be brought for that purpose by one or more of such persons.

Under this chapter it appears that partition is a matter of right, and the only question to be decided by a court in any such action is to determine whether the premises can be physically partitioned, or whether the premises should be sold at partition sale and the proceeds divided among the respective parties.

For the foregoing reasons the judgment must be, and is, reversed and remanded to the circuit court for further proceedings consistent with this opinion.

RENTTO, P. J., and HANSON, BIEGELMEIER and HOMEYER, JJ., concur.

LUND, Circuit Judge, sitting for ROBERTS, J., disqualified.